Milligan, J.,
delivered the opinion of the court:
This action is founded on a written contract for the delivery of 1,200 cords of wood at Fort Lyon, in Colorado Territory. The petition states that the whole quantity of wood stipulated in the contract was delivered, and that the government has paid him on his contract the sum of $11,792, leaving a balance of $5,896 still due and owing, for which this suit is prosecuted.
The facts necessary to a decision of this case are found to be:
I. On 'the 25th of August, 1866, the defendants, by their duly authorized quartermaster, entered into the written agreement with the claimant declared upon and forming a part of the petition. On the 15th of November, 1866, the day the contract required the delivery of the wood to begin, 200 cords were duly delivered at Fort Lyon, properly piled and corded, at such place as the post quartermaster directed; and, in like manner, during each month of the contract, 200 cord's were delivered, piled, and corded; so that on the 15th of April, 1867, there had been 1,200 cords delivered at the fort under the contract.
The defendants did not relieve the claimant from the obligation of his contract to deliver 200 cords each month, beginning on the 15th of November, 1866, nor notify him that a less quantity would be received, until subsequent to the 15th of April, 1867. Of the 1,200 cords so delivered, piled, and corded, the defendants accepted and used 840 cords, and, after the 15th of April, 1867, notified the claimant that they could not accept the balance, and insisted on the right of the chief quartermaster *of the Department of the Missouri to determine the quantity to be received under the contract.
*507 The defendants have paid for 800 cords of wood, leaving 40 cords of the wood ■ accepted and used. They have refused to pay for the 360 cords, which was sold after the removal of Fort Lyon, and which brought the sum of $3 per cord, that being the fair value of it at that point.
II. It fully appears that the claimant did not deliver any of the wood called for by his contract, or incur any expense in its fulfilment, but the same was delivered by, and at the cost and expense of, one Andrew J. Gill. There was a verbal agreement between the claimant and Gill that the claimant’s interest in the contract should cease, and that Gill should receive all the benefits arising under the contract with the government. Gill then associated with himself one J. F. Buttles, and they furnished all the money and expenses incident to the filling of the contract, acting nominally as the claimant’s agents, but really in their own interest. The remaining 360 cords of wood, sold as before stated, were in point of fact sold by Buttles.
III. This action was brought by said Andrew J. Gill, on the 16th day of December, 1868, in the name of the claimant, who appears to have no interest in it.
Gill holds a power of attorney from the claimant, dated the 27th of October, 1868, authorizing him “to prosecute to payment” all claims against the defendants growing out of the contract declared on in the petition, and to recover any checks or drafts given on final settlement or adjudication, with full power and authority to perform any and every act relating thereto, which he (the claimant) might perform.
On these facts three propositions are deducible:
1. The contract of the 25th of August, 1866, between the government and E. D. Wheeler, the nominal claimant, was a valid and binding obligation between them.
2. Wheeler, to whom the contract was awarded, never himself performed or attempted to perform it; but, by parol contract with Andrew J. Gill, transferred and substituted him to all his interests in the contract, who, together with J. F. Buttles, at their own costs and expense, fulfilled the stipulations of the contract, and claim the profits under it.
3. The wood, 1,200 cords, was delivered, and 840 cords received and used by the government, leaving 360 cords which were not received, and 400 cords out of the 1,200 not paid for.
Ordinarily in such a case between individuals, there would *508 be little difficulty iu declaring the claimant’s right to recover; but the Act of Congress approved July 17, 1862, (12 Stat. L., p. 596,) interposes a serious difficulty. The fourteenth section declares:
“No contract or order, or any interest therein, shall be transferred by the party or parties to whom such contract or order may be given, to any other party or parties; and any such transfer shall cause the annulment of the contract or order transferred, so far as the United States are concerned.” * *
The reason for this stringent provision of the statute is fully set out iu the sixteenth section of the same act, which declares that, “ whenever any contractor for subsistence, clothing, arms, ammunition, munitions of war, and for every description of supplies for the Army or Navy of the United States, shall be found guilty by a court-martial of fraud or wilful neglect of duty, he shall be punished by fine, imprisonment, or such other punishment as the court-martial shall adjudge; and any person who shall contract to furnish supplies of any kind or description for the Army or Navy shall be deemed and taken as part of the land or naval forces of the United States, for which he shall contract to furnish said supplies, and be subject to the rules and regulations for the government of the land and naval forces.”
The force and effect of these provisions of the statute, as well as the reasons on which they are founded, are too plain to require comment. They prohibit the transfer of all contracts or. orders, or any interest therein, for supplies of every kind and description for the Army or Navy; and any transfer of any such contract or order, or interest therein, works an absolute annulment of the contract or order, so far as the United States are concerned.
This provision of the act of 1862 has been held, and we think correctly so, by the United States Attorney General, not to apply to contracts made previous to its passage, but its applicability to all contracts or orders made or issued since is not doubted by the Attorney General, (10 Opinions, 523,) and it was so held by this court in Chollar's Case, (2 C. Cls. R., p. 319.)
In the case under consideration, there is an attempt to show that the contract was performed by Gill as' the agent of the nominal claimant. But Gill’s-testimony was put in by the Assistant Attorney General. It shows that, in filling the con *509 tract, be was “nominally acting as tbe agent of the claimant,” and that at the time he was appointed his agent, it was understood between him and Wheeler that the latter’s interest in the contract should cease. Gill furnished all the money to fulfil the contract, and now prosecutes this suit at his own expense, and claims the recovery sought in his own right.
Under this state of facts, it cannot be doubted that Gill’s agency was only colorable, while he was in fact the real party ' in interest in the contract. Wheeler with drew from it; Gill took his place, bore all its burdens, and was to receive all the profits. Gill was not known to the United States as a contractor, nor was he liable, under the sixteenth section of the act of 1862, to the rules and regulations of the Army, or to be punished by court-martial “for fraud or wilful neglect of duty;” and this, we think, makes a case strictly within tlie inhibition of the act, which is broad and comprehensive in its terms, and not to be evaded by refined subtleties or ingenious argument.
It follows that the contract was by the transfer annulled, so far as the United States are concerned, and we can render no judgment on the contract. But it appears that the United States received and used 40 cords of the wood delivered under the agreement, for which, on grounds of quantum meruit, the claimant, for the use of Gill, is entitled to recover. We find it to be worth $14,74 per cord, making $589“ 60, for which judgment will be entered.