Millig-an, J.,
delivered the opinion of the court:
The claimants are British subjects, and bring this action to recover the net proceeds of three hundred and nine bales of upland cotton, taken possession of by the United States after the •occupation of Savannah by General Sherman.
The facts found by the court are as follows :
1. The claimants are cotton-spinners in Staleybridge, England, and in the month of September, 1861, they wrote to Bat-tersby & Oo., at Savannah, Georgia, directing them to have one thousand bales of cotton purchased for them, to keep the same stored until the removal of the blockade, and to draw on them for the purchase-money. Upon this order, Battersby & Co. purchased seven hundred and fifty bales of cotton, of which the cotton claimed forms a part, and reimbursed themselves by drawing bills of exchange on the claimants in England.
j 2. The cotton claimed, viz: three hundred and nine bales upland, was stored for the account of the claimants in the city of *326 Savannah. When the United States forces entered that city, they took possession of it by the agents of the government, shipped it to New York, there sold it, and paid the net proceeds, amounting to $54,176 97, into the Treasury of the United States.
3. The claimants are subjects and residents of Great Britain, and never gave any aid or comfort to the late rebellion, or persons engaged therein.
4. The British government accords .to citizen s of the United States the right to prosecute claims against that government in its courts, substantially as they are by law authorized to prosecute such claims against this government.
On the argument of this case the question was raised, but not vigorously pressed, that the transmission of the order to Battersby & Co., directing them to purchase the cotton in question, was a violation of the blockade. The order under which the purchases were made was dated the 10th of September, 1861, and whether it reached the purchasing agents at Savannah directly through the blockading squadron, or was received at some one of the ports in the loyal States and conveyed overland through the mails to Battersby & Co., does not appear. The reasonable inference, and perhaps the legal presumption, is that it came by the latter route. But be this as it may, it is not regarded of any importance. The transaction was purely of a private and commercial nature, and in no way connected with the war, or intended to have a hostile influence for or against either party to it. The order itself guarded the purchasing agents against all attempts to violate the blockade by sending the cotton out during its continuance. It was to be stored until the blockade was raised, and by no authority of which we are aware was the mere transmission of the order to-purchase a breach of the blockade, or a violation of any law of the United States.
Next, it is assumed-in argument that the transaction was aid and comfort to the enemy. The ground on which this argument seems to rest is, that it placed a fund in England on which an enemy of the United States might draw and apply to belligerent purposes. ' ■ .
This proposition may be admitted as a fact, but it would be a severe rule of law indeed, if such flowed from it, that would exclude the claimants from a standing in this court for what their agents might have done, but in fact did not d'o-. The- *327 offences of Battersby & Co., whatever they may have been, independent of and outside of their connection with the claimants, can by no law of which we have any knowledge be imputed to the claimants.
But we do not place our decision of this question wholly on this ground. Battersby & Co. were authorized to draw on the claimants in England, to reimburse themselves for the purchase price of the cotton. They did so; but it nowhere appears in this record that any part of this-fund was ever employed in the service of the rebellion, or even brought within the limits of the rebel territory.
The question as made in the record then stands, was it aid and comfort to the rebellion for the claimants, being alien neutrals, to purchase the products of the insurrectionary States, for ordinary business purposes, through a commercial house in the rebel States, and to accept and pay their drafts in England for the purchase price of such products ? There is no law of the United States forbidding such a transaction in an alien neutral, and it contravenes no rule of the public law. The transaction was in itself legal, and the proof shows that it worked no aid or comfort, directly or indirectly, to the enemy. La Plante’s Case, (ante, ¶. 311.)
On the whole case we hold the claimants entitled to recover, and direct that judgment be entered iii their favor for $54,170 97.