Milligan, J.,
delivered the opinion of the court:
This suit is founded on the same contract on which the suit óf E. D. Wheeler, heretofore tried and determined in this court, was predicated. The breach of the contract set up and relied *525 on in tills case is identically the same complained of in the other.
Wheeler averred in his petition that, on the 25th day of August, 1888, at Fort Lyon, Colorado' Territory, he (petitioner) entered into a contract, in writing, with Captain H. L. Thayer, assistant quartermaster, acting on behalf of the United States, for the delivery at said Fort Lyon, Colorado Territory, of twelve hundred cords (or such amount as may be required, to be determined by the chief quartermaster of the Department of the Missouri) of good merchantable wood, properly corded, at such place at Fort Lyon, Colorado Territory, as the post quartermaster may direct, at the price of fourteen dollars and seventy-four cents per cord.
The contract, as set out in the finding of facts in this case, was appended to his petition and made part of it.
He further avers “that on the 27th day of September, 1866, he (petitioner) was notified by Captain H. L. Thayer, assistant quartermaster aforesaid, that twelve hundred cords of wood would be required upon his said contract,” and then alleges that he delivered the wood according to the terms of the contract, and “ that the United States has paid to him (petitioner) upon his said contract the sum of $11,792, and no more,” and that there is still due him on his said contract the sum of $5,896, for which he prosecutes his suit.
On the trial of this case the court found, as a matter of fact, that the contract had been transferred bjr Wheeler to the present claimant, Andrew J. Gill, and thereby annulled, so far as the United States were concerned, and that this court could render no judgment on it against the Government.
But as it appeared that the United States had received and used forty cords of wood delivered under it, the law implied a contract for that amount, and, on grounds of quantum meruit, the claimant, Wheeler, was entitled to .recover for the use of Andrew J. Gill, the present claimant, the value of said forty cords, which was found to be $589.60, and for which judgment was entered. (E. D. Wheeler v. The United States, 5 C. Cls. R., 504.)
The judgment in that case was rendered in May, 1870, and thereafter, in July following, the present claimant, Andrew J. Gill, filed his petition in this court, claiming damages of the *526 United States for the same breach of the identical contract involved in Wheeler’s Case.
He avers in bis petition “ that Ernest D. ‘Wheeler, on the 25th day of August, A. D. I860, acting for and on behalf of petitioner, entered into a written contract with Captain H. L. Thayer, assistant quartermaster, acting on behalf of the United States, for delivery at Fort Lyon, Colorado Territory, of twelve hundred cords of wood.”
He then annexes to his petition a copy of the same contract set out by Wheeler in his petition, and avers that on the same day stated by Wheeler, i. e., the 27th of September, A. D. 1$G6, Captain Thayer, assistant quartermaster, notified him and his agent, Wheeler, that twelve hundred cords of wood would be required on the contract, unless the amount should be changed by competent authority.
He further alleges, as Wheeler had previously done in respect to himself, that he fulfilled the contract according to its terms, and has received thereon only $11,792, and the balance, which he alleges amounts to $4,224.40, is still due him.
The sum of $4,224.40 is exactly the sum claimed by Wheeler, less the amount recovered in his action, and $1,080 realized on the sale of wood delivered under the contract, but not paid for by the United States.
The history of these suits, thus drawn from the record, leaves no doubt that they were both brought for the same cause of action, and if the parties or privies in interest are the same in both cases, on the plainest principles of elementary law the claimant’s jiresent action is barred by the former judgment.
Privity, in .this sense, denotes mutual or successive relationship to the same rights of property. “ And the ground,” says Greenleaf, in his second volume on Evidence, section 522, “upon which persons standing in this relation to the litigating parties are bound by the proceedings to which he was a party is, that they are identified with him in interest, and whenever this identity is found to exist, all are alike concluded. Hence' all privies, whether in estate, in blood, or in law, are estopped from litigating that which is conclusive upon him with whom they are in privity. And if one covenants for the result or consequences of a suit between others, as if he covenants that a certain mortgage assigned by him shall produce a specified sum, he thereby connects himself in privity *527 with, tlie proceedings, and the record of the judgment in that suit will be conclusive evidence against him.” (Carver v. Jackson, 4 Peters, 85, 86; Case v. Reeve, 4 Johns., 81. Also, as to the last proposition, Rapelye v. Prince. 4 Hill R., 119.)
In the cases now under consideration it is admitted that the petition was filed in the first case in the name of E. D. Wheeler, and in the second in the name of A. J. Gill; but in the former Gill was called as a witness by the defendants, and testified u that he alone was interested in the claim then involved in litigation, and that he individually instituted that suit and was prosecuting it, and up to that time he had borne all the expenses of the litigation, and that Wheeler had no interest in it.”
Under this state of facts, the court, desirous to reach the equities of the parties, treated Wheeler as the nominal party, and Gill as the real party in interest, and gave its judgment for $589.60 for Gill’s use.
It follows, therefore, that Gill, was to all intents and purposes, a privy in interest in the former litigation, and is bound by the judgment.
Having reached this conclusion, the opinion of the court might here be closed, but as the decision of this point does not affect the grounds on which the. case was placed in argument, it is deemed proper briefly to notice them.
It is assumed that Wheeler, in whose name the contract was made with the United States, was not in point of fact the principal in the contract, but the mere instrument and agent of Gill, for whom he contracted, and that his rights as principal in the contract have never been determined by this court.
It may be admitted under the general law of agency, (and this court in Ramsdell’s (Jase, 2 O. Cls. R., 508, has so declared the law,) that when a contract is made by an agent, the principal whom he represents may maintain an action upon it in his own name, .although the name of the principal was not disclosed at the time of making the contract, and, although the contract be in writing, parol evidence is admissible to show that the agent was acting for his principal.
But Ramsdell’s (Jase rests on the decision of the Supreme Court in the case of Ford v. Williams, (21 Howard, 287,) a decision which was delivered before the passage of the Act 17th July, 1863, on which Wheeler’s Case was made to *528 turn. It rests upon tbe general law of agency, and bas no reference to the limitations imposed by Congress upon the contracting agents of the United States, and those who deal rvith them.
The Act June 2d, 1862, (12 Stat. L., p. 411,) is entitled “ An act to prevent and punish frauds on the part of officers intrusted with the making of contracts for the Government.” Cue means by which this purpose is designed to be carried out is, the requirement that every contract shall be reduced to Avriting and signed at the end thereof by the contracting parties. The language of the statute is, “ It shall be the duty of the Secretary of War, of the Secretary of the Navy, and of the Secretary of the Interior, immediately after the passage of this act, to cause and require every contract made by them severally on behalf of the Government, or by their officers un'der them appointed to make such contracts, to be reduced to Avriting and signed by the contracting parties with their names at the end thereof.”
For the same reason the Act July 17th, 1862, (12 Stat. L., 597,) in its fourteenth section declares, that “ no contract or order, or any interest therein) shall be transferred by the party or parties to whom such contract or order may be given, to any other xiarty or parties; and any such transfer shall cause the annulment of such contract or order transferred, so far, as the United States are concerned.”
Added to this, the sixteenth section of the same act declares that u every person who shall contract to furnish supplies of any kind or description for the Army or NaA^y, shall be deemed and taken as part of the land or naval forces of. the United States for which he shall contract to furnish such supplies, and be subject to the rules and regulations of the land and mwal forces.”
These statutes, as well as others that might be referred to, under well-settled law, enter into and become a part of every public contract made by the Secretary of War, or by the Secretary of the Navy, or by their officers under them appointed to make contracts for supplies for the Army or Navy. And it is difficult to see how the principle announced in BamsdelVs Case before the passage of the acts of 1862 can be applied to this case. The Act June 2d, 1862, prescribes the mode and manner in which contracts like the one under consideration *529 ■shall be made ; and when this is done by law, all other modes are excluded. The signature of the contracting party is made necessary by the act, for thereby he voluntarily makes himself, ■under the sixteenth section of the Act. July 17fit, 1802, a part •of the land or naval forces of the United States for which he •contracts to furnish supplies, aud subjects himself to the rules •and regulations thereof.
It is true the provisions of this section are extended by the seventh section of the Act July Mh, 1864, (15 Stat. L./p. 397,) to all person's engaged in executing such contracts; but this ■only enlarges the scope of the Act July 17th, and in no degree ■excuses the real contracting party from complying with the plain provisions of the Act June 2d, 1862.
On this ground, therefore, as well as on the grounds heretofore set out, the claimant cannot- recover in this action, and his petition must be dismissed. *