*415 OPINION.
Davis, J.,
delivered the opinion1 of'the court:
This case has two branches, with quite distinct questions of law for decision.
I. On the 8th of October, 1875, the Postmaster-General made a contract with the Lake Superior and Mississippi Eailroad Company for the transportation of mails during a term of four years, which contract contained the following provision:
9th. That the Postmaster-General may discontinue or curtail the service in whole or in part whenever the public interests, in his judgment, shall require such discontinuance or curtailment for any cause; he allowing as a full indemnity to the contractor one month’s extra pay on the amount of service dispensed with, and a pro rata compensation for the amount of service retained aud continued.
After the passage of the Act of July 12,1876, ch. 179, § 13 (Suppl. Eev. Stat., 226, aud 19 StatL., 79), the compensation paid to the company for the service was reduced in conformity with its provisions. In June, 1877, the Lake Shore and Mississippi Eailroad and rolling stock and the other property and franchises of the company were ■ sold - under a decree for the foreclosure of a mortgage, and were purchased by trustees for the benefit of such bondholders,, stockholders, and creditors as had combined together for the purchase. The purchasers organized themselves together into the corporation which is the plaintiff in this suit, and received conveyance .of the property and estate sold under the decree. Among the property thus sold and assigned was the claim for the reduction in the pay for the service under the contract. That claim amounted at the date of the sale to $3,686.76. This claim constitutes the first branch of the case.
The defendants first contend that the Postmaster-General was authorized by the Act of 1876 to make these reductions in the pay for the service, and that therefore the Lake Superior and Mississippi Eailroad Company had no just claim for amounts • thus reduced and detained which could be assigned to the claimants.
In the case of the Illinois Central Eailroad Company, decided at the present term, this question was raised and decided by us adversely to the Government, in conformity with the rulings of the Supreme Court in the cases of The Chicago and North *416 western Railway Cnmpany (104 U. S. R., 680) and The Chicago, Milwaukee and Saint Paul Railway Company (104 U. S. R., 687). The opinion of the court in that case [ante, 118) is made part of the opinion in this one, in order to explain why we must now hold against the defendants on this point.
The defendants also contend that this assignment is within the prohibition of Revised Statutes, § 3477. This section, which has often been construed by the courts, provides that—
All -transfers and assignments made of any claim upon the United' States, or any part or share thereof, or interest therein, whether absolute or conditional, and whatever may be the consideration therefor, and all powers of attorney, orders, or other authorities for receiving payment of any such claim, or any part or share thereof, shall be absolutely null and void, unless they are freely made and executed, in the presence of at least two attesting witnesses, after the allowance of such a claim, the ascertainment of the amount due, and the issuing of a warrant for the payment thereof.
This statute, enacted in 1846 and in 1853 for the protection of the Treasury, was found in practice to be sometimes harsh and frequently onerous: Parties tried to evade it, and invoked the aid of the courts in their efforts. Finally, in 1877, it received an elaborate and carefully considered construction from the Supreme Court, in Gillis’s Case (95 U. S. R., 407). The court says of the acts of 1846 and 1853:
So far are they from giving new potency to assignments and transfers of rights in action, so far from changing the common-law rule that such rights are not assignable, the statute strikes down and denies any effect to powers of attorney, orders, transfers, and assignments, which before were good in equity, and which a debtor was bound to regard when brought to his notice. * * * It is an unwarrantable assumption to set up that Congress had in mind only claims presented to the Treasury Department. When the act was passed many claims were presented to Congress, and a vast number were set up by way of defalcation, in suits brought by the Government, where there was a full opportunity to cross-examine the witnesses called in their support. That Congress had all such claims in view, and intended to prevent their assignment and debar any assignee from setting them up, is, we think, altogether probable,, * * * It must be admitted that the act [of 1855, establishing the Court of Claims] contemplates the possibility of an effective assignment of some claims. What those are it is not necessary now to determine. Even the act of 1853 excepted from its sweeping provisions certain claims which were liquidated, and for which warrants were drawn. * * * That the act creating the Court of Claims did not work a repeal of any provisions of the act of 1853, nor itself make claims assignable that were incapable of assignment before its enactment, is beyond reasonable doubt. At most it suggests that claims which are assignable may be sued in the Court of Claims in the name of *417 undertaking to declare what claims may be assigned. That there may be such claims is clearly stated in the act of 1853, and there are devolutions of title by force of law, without any act of parties, or involuntary assignments, compelled by law, which may have been in view.
Erwin’s Case (97 U. S. R., 392) the court gave a further intimation of its views as to the classes of claims which were assignable, notwithstanding the Act of 1853. It said:
The act of Congress of February 26, 1853,- to prevent frauds upon the Treasury of the United States, which was the subject of consideration in the Gillis Case, applies only to cases of voluntary assignment of demands against the Government. It does not embrace cases where there has been a transfer of title by operation of law. • The passing of claims to heirs, de-visees, or assignees in bankruptcy are not within the evil at which the statute aimed; nor does the construction given by this court deny to such parties a standing in the Court of Claims.
An opportunity was offered to the court in Spofford v. King (97 U. S. R., 484) to ‘express its views further upon the class of claims within the operation of the statute, and it held not only that the attempted assignment was void as against the United States, but that it was void' as between the parties. It said:
We cannot say that when the statute, declares all transfers and assignments of the whole of a claim, or any part or interest therein, and all orders, powers of attorney, or other authority for receiving payment of the claim, or any part thereof, shall he absolutely null aiid void, that they are only partially null and void; that they are valid and effective as between the parties thereto, and only invalid when set up against the Government.
' Nevertheless, at the same term the court did give.effect to an assignment, so far as to sustain a partial payment made at the Treasury to an assignee (McKight’s Case, 98 U. S. R., 179); and it is worthy of remark that a subsequent ease in this court (Hart’s Case, 16 C. Cls. R., 459) shows conclusivley that the transaction whose validity was sustained by the court in McKnight’s Case was a fraud, and was the very evil which the statute was framed to prevent.
In the case of Goodman v. Niblack (102 U. S. R., 556) it appeared that the plaintiff claimed under a general assignment by one Sloo for the benefit of creditors, and that among Sloo’s .assets was a elaim against the. Government which had been paid to Niblack as the administrator de bonis non of Sloo. This assignment was sustained by the court, which says:
In what respect doeáthe voluntary assignment for the benefit of his eredit-.oi-s, which is made by an insolvent debtor, of all his effects, which must, if *418 it "be honest, include a claim against the Government, differ from the assignment which is made in bankruptcy? There can here be no intent to bring improper means to bear in establishing the claim, and it is not perceived how the Government can be embarrassed by such an assignment.
Burlce’s Cáse (13 C. Cls. B., 231) was decided in this court at the same term in which Brivin’s Case (13 C. Cls. B., 49) was decided here, the decisión in which was affirmed above, as already noted. In Burke’s Case there were two claimants under assignments, one under an assignment made for good consideration before bankruptcy, the other under an assignment in bankruptcy. We held that the assignment prior to the bankruptcy was void under the statute, but upheld the assignment in bankruptcy.
From these cases we deduce the general principle proceedings to which the United States are a party the courts, are to maintain the statute in its integrity, as voiding all assignments of claims against the United States made before the issuing of a warrant for payment, except such as are made in a general transfer of the claimants’ property by operation of law, or by a voluntary transfer of all the claimants’ property honestly made by him for the benefit of all Ms creditors. That is the extent to which the Supreme Court has thus far, in the interest of equity and good conscience, lent itself to modifications of the stringent provisions of the law originally enacted in 1846, (9 Stat. L., 41), re-enacted in 1853 (10 Stat. L., 170),. and again re-enacted in the Bevised Statutes in 1874.
The question which presents itself to the court in this branch of the case is this: Is a transfer under a decree for the foreclosure of a mortgage, and a sale for the benefit of mortgage creditors, and a transfer to a reorganization composed of mortgage bondholders, other creditors, and stockholders entitled to the equities which induced the Supreme Court to take out of the operation of the statute a voluntary assignment by a debtor for the benefit of all his creditors?
On this point the judges who take part in this decision are not agreed. Inasmuch as the Act of June 23,1874, ch. 468 (18 Stat. L., 252, and Supplement to Bev. Stat., 105), makes the concurrence of three judges necessary to the decision of any case, and the claimants have failed to convince the three judges who heard the case that the transfer in question is not such an assignment-as is made invalid by the Bevised Statues, therefore *419 the court, in order to afford an opportunity for presenting this question to the higher court, are against the claimants on this, branch of the case.
II. The claimants after the transfer of the railroad to thenr. continued to perform the service for the remainder of the contract term. The defendants coritinued to make deductions from > the contract price in conformity with the Act of July. 12, 1876, ch. 179, § 13 (Suppl. Eev. Stat., 226, and 19 Stat L., 79), up to the 30th June, 1878, and after and until the ehid of the contract term in conformity with the provisions of the Act of 1876 and. of the further provisions, of the Act of June 17,1878, ch. 259,. pant 4 (Suppi. Eev. Stat., 359, and 20 Stat. L., 140). These-reductions amounted to $8,454.60, and the claim for them constitutes the second branch of the claimants’ case.
The defendants contend—
1st. That the claim is invalid by reason of the Acts of 1876' and 1878, which we dispose of as we disposed of the similar claim under the first branch of the case.
. That the assignment annulled the contract, leaving the claimants, as mail-carriers, subject to the operation of the Acts of 1876 and 1878. In support of this contention reference is made to section 3737 of the Eevised Statues. That section reads as follows:
Séc. 3737. No contract or order, or any interest therein, shall he transferred by the party to -whom such contract or order is given to any other party, and any such transfer shall cause the annulment of the contract or order transferred so far as the United States are concerned.
There are n'o equities in this case to induce the court to say that a statute which says that an assignment of a contract shall cause its annulment means that it shall occasionally cause its annulment. The claimants made no time contract with the United States which courts must support against the manifest will of Congress. On the contrary, they are seeking to exact of the Government a rate of pay which the statute forbids, and invoke in support of their claim the benefit of a contract with another party, which they have received in assignment in violation of the express provisions of the statute.
It is not necessary in so plain a case to go behind the statute and inquire why Congress enacted it; but if we should do so there would be no difficulty in finding reasons, of the highest public importance why Congress should wish to give to the *420 Executive absolute control over tbe personnel of contractors, and should not leave it subject to have its contracts assigned to persons with whom it would not originally have contracted. (Wheelers Case, 5 C. Cls. R., 504; Wanless Case, 6 C. Cls. R., 323; Gill’s Case, 7 C. Cls. R., 522; affirmed on appeal, 10 C. Cls. R., 156.)
For this reason we decide unanimously against the clairm mnts on the second branch of their case.
The judgment of the court is that the claimants’ petition be 'dismissed.
Dbake, C. J., was not present at the hearing of this case, and took no part in its decision. 4