Richardson, Ch. J.,
delivered the opinion of the court:
. Two adverse claimants bring their separate actions to recover the money which became payable at the Treasury upon judgments recovered in the Court of Commissioners of Alabama Claims. They are, on the one side, George Howes & Co., the judgment creditors, and on the other George R. Wells, receiver.
In 1882 the Nevada Bank of San Francisco recovered judgment against George Howes & Co. in the Superior Court of the city and county of San Francisco for a large amount. The judgment remaining unsatisfied, the creditor bank filed a supplementary petition in said case praying for the appointment of a receiver of the claims of George Howes & Co. against the United States for their undistributed portion of the Geneva award money, which they were prosecuting before the Court of Commissioners of Alabama Claims. Upon this petition the court enterd a decree November 6,1885, set out in finding in, appointing said Wells receiver, and subrogating him to all rights, duties, powers, and privileges of said Howes & Co. in the matter of the two claims against the United States pending before said commissioners, and authorizing him to intervene or interplead before said commissioners, and to take all steps to recover and collect said claims and to reduce the same into possession.
The receiver thereupon moved in the Court of Commissioners of Alabama Claims for leave to intervene and to have judgments in said claims entered in his favor, but the court overruled the motion and gave judgment in favor of George Howes & Co.
*181 When the Comptroller of the Treasury was about to state accounts on the judgments, the receiver appeared before him also and asked to intervene as the rightful claimant, and to have the accounts stated in his favor, but the Comptroller refused to recognize any rights on his part, and stated the accounts in favor of the Howes. Before both the Comptroller and the Court of Commissioners of Alabama Claims the Howes appeared and resisted the motions of the receiver. The same issue between the parties, which has twice been decided elsewhere, is again raised here, and we are now required to pass upon it.
In our opinion the decrees of the Superior Court of the city and county of San Francisco, November 6, 1885, set out in finding in, and November 28, 1887, set out in finding ix, did not operate to so transfer the claims of George Howes & Co. against the United States to the receiver as to confer upon him the legal right to bave the account stated in his favor by the Comptroller, and does not give him the right to present and prosecute those claims in this court.
It was not until the passage of the Act of June 5,1882 (22 Stat. L., 98), that individuals had any legal claim or rights to share in the money acquired by the Geneva award under treaty stipulations, except those recognized by the previous Act of June 23, 1874 (ch. 459), which did not include the claims of George Howes & Co.
By the act of 1882 the United States created and made provision for ascertaining and paying a class of claims which included those of the Howes, and it was after the passage of this act that the proceedings in the Superior Court of the city and county of San Francisco for the appointment of a receiver were commenced. The act, in legal effect, had made such claims demands against the United States, of which this conrt had jurisdiction, as was held in the case of Weld & Go. (23 C. Cls. R., 126), affirmed on appeal (127 U. S. R., 51), and they had become subject to the stringent provisions of the following section of the Kevised Statutes:
uSbc. 3477. All transfers and assignments made of any claim upon the United States, or of any part or share thereof, or interest therein, whether absolute or conditional, and whatever may be the consideration therefor, and all powers of attorney, orders, or other authorities for receiving payment of any such claim, or of any part or share thereof, shall be absolutely null and *182 void, unless they are freely made and executed in tbe presence of at least two attesting witnesses, after the allowance of such, a claim, the ascertainment of the amount due, and the issuing of a warrant for the payment thereof.
“ Such transfers, assignments, and powers of attorney must recite the warrant for payment, and must be acknowledged by the person making them before an officer having authority to take acknowledgments of deeds, and shall be certified by the officer; and it must appear by the certificate that the officer at the time of the acknowledgment, read and fully explained the transfer, assignment, or warrant of attorney to the person acknowledging the same.”
In the case of Lopez (24 C. Cls. R., 84) we expressed our views in relation to the effect of that section upon voluntary assignments, orders, and powers of attorneys made by persons having claims against the Government, and while we held that the accounting officers of the Treasury; in their discretion and for the convenience of parties, were at liberty to recognize the same when unrevoked and uncontroverted and to state accounts in favor of the assignees, we also held that the latter had no rights which made it obligatory upon those officers thus to state accounts, that the United States could not be involved in controversies between private parties, and that assignees by voluntary assignments had no rights which could be enforced in this court.
There are certain exceptions to the broad interpretation suggested by the language of the statutes which have been recognized by judicial decisions. Assignments by proceedings in bankruptcy, voluntary assignments by debtors of all their estates, and the passing of claims by operation of law to executors, administrators, and legatees have been held not to be void under the law. (Burke’s Case, 13 C. Cls. R., 231; Erwin’s Case, 13 C. Cls. R., 49, affirmed on appeal, 97 U. S. R., 392; Goodwin v. Niblack, 102 U. S. R., 556; St. Paul and Duluth Railroad Company Case, 18 C. Cls. R., 418, affirmed, 112 U. S. R., 733.)
In the St. Paul and Duluth Railroad Case, Davis (Bancroft), J., speaking for this court, after reviewing the Supreme Oourt decisions, draws the following conclusions therefrom :
u From these cases we deduce the general principle that in all proceedings to which the United States are a party the courts are to maintain the statute in its integrity, as voiding all assignments of claims against the United States made before the issuing of a warrant for payment, except such as are *183 made in a general transfer of tbe claimant’s property by operation of law, or by a voluntary transfer of all tbe claimant’s property honestly made by bim for tbe benefit of all his creditors. That is tbe extent to which tbe Supreme Court has thus far, in tbe interest of equity and good conscience, lent itself to modifications of the stringent provisions of tbe law.”
In tbe case of Goodman v. Niblack, Mr. Justice Miller delivered tbe opinion of tbe Supreme Court, from which we make tbe following extract, which is preceded in the opinion by tbe statement that the court bad held that the statute <jid not include a transfer in bankruptcy:
“In what respect does the voluntary assignment for tbe benefit of his creditors, which is made by an insolvent debtor of all Ms effects, which must, if it be honest, include a claim against the Government, differ from tbe assignment which is made in bankruptcy ? There can here be no intent to bring improper means to bear in establishing the claim, and it is not perceived how the Government can be embarrassed by such an assignment. The claim is not specifically mentioned, and is obviously included only for the just «and proper purpose of appropriating the whole of his effects to the payment of all his debts.”
From these quotations it will be seen that the courts recognize as exceptions to the operation of the statute only those assignments made necessary by the actual death of the creditor, those provided for under general laws in case of his civil death as tó all his estate by proceedings in bankruptcy, and those, in analogy to the latter, made by voluntary transfer of all his property for the benefit of all his creditors. The Supreme Court, in its opinion in the case of Goodman v. Niblack, emphasizes the element that such a voluntary transfer by the creditor is an assignment of all Ms effects by printing those words in italics.
One of the obvious benefits to the United States to be derived from the statute making assignment of claims void was the right of the officers of the Government to have the original creditor or, in ease of death or general assignment of his estate, his successor to all his business affairs to deal with in settling accounts, unembarrassed by controversies between him and his creditors. The value of that right is clearly shown in this very case. After appointment of this receiver, the Government made a settlement with Jabez Howes, one of the original claimants, by which he released his share in the claims now in suit and ratified and confirmed the action of the accounting *184 officers in crediting one-half on a judgment debt against him and others in favor of the United States; and this was done to assist in effecting a settlement and discharge of the latter judgment. This release would not have been valid if the transfer by the California court were sustained and the Secretary of the Treasury were bound to recognize it.
The claimant, Wells, was not appointed receiver of all the partnership estate of George Howes & Co., nor of any of the separate estate of the partners. He was appointed receiver only of these particular claims against the United States, and the court undertook to transfer to him those claims alone by a decree of subrogation, with authority to intervene or interplead in the Court of Commissioners of Alabama Claims and to bring suit against the Unitea States in the Court of Claims.
This proceeding was in the nature of an equitable attachment of a claim against the United States in favor of a single creditor, and the transfer of the claim to a receiver for the benefit of such creditor alone.
If attachments, subrogations, and assignments, such as those relied upon by the claimant, Wells, as receiver, should be upheld, the Government would not only be deprived of the right to settle with those claimants to whom it was originally indebted, whose estates became thus attached, but might also be involved in controversies between such claimants and their creditors as well as between conflicting attaching creditors in different courts, contrary to the spirit if not the letter of the law, passed to prevent frauds upon the Treasury of the United States.
Should the practice of making such attachments become common, as it no doubt would if sustained, the business and responsibilities of the accounting officers would be largely extended and the liability of frauds upon the Treasury by errors and otherwise would be greatly increased. For example, in the present case the parties appeared before the Comptroller, and the claimants, Howes & Co., controverted the legality of the appointment of the receiver on the ground that one of the partners, George Howes, was not served with notice of the suit in California, and further they contended that the right of the receiver to intervene and prosecute this claim had been submitted to the Court of Commissioners of Alabama Claims and *185 there decided against him, and the matter was therefore res judicata.
To the decree of the California court giving authority to the receiver to bring his action in the Court of Claims we give no force, as the laws of Congress alone determine who may bring actions in this court.
It is not within our province to consider whether or not the California court may punish the Howes for contempt of court in disobeying its orders, if it can reach them personally, nor whether or not the proceeds arising from these claims might not be held under its decrees if they should be reached by valid process of the court. We express no opinion on these questions.
The petition of George B. Wells, receiver, is dismissed.
This brings us to the consideration of the claim of George Howes & Co. '
When the Fifth Auditor stated accounts upon the judgments of the Court of Commissioners of Alabama claims in favor of George Howes & Co., and they had reached the First Comptroller for his decision thereon, that officer finding a judgment in favor of the United States against Jabez Howes and others for a large sum, and nothing to show that George Howes and Jabez Howes were not equal partners in the firm of George Howes & Co., he severed their interests, and applied one half the amount due on the judgments of the Court of Commissioners of Alabama Claims to be credited to Jabez Howes, on said judgment against him, and the other half to be paid to George Howes by draft in his favor. .
A full statement of that settlement was sent by the Comptroller to the attorney of record of said George Howes & Co., and soon after drafts for the amounts allowed to George Howes, payable to his order, were also forwarded to said attorney. Those drafts were collected by an attorney in fact, appointed by said George Howes, who indorsed them as authorized by his power of attorney. No objection seems to have been made to that settlement by George Howes & Co. or either of the partners until this action was commenced. .
It is among the general duties of the Treasury Department, through the accounting officers, to settle all claims and demands by and against the United States, and in proper cases to set off one against the other when the Government is both *186 debtor and creditor of tbe same party. (Taggart’s Case, 17 C. Cls. R.,323; Bonnafon, 14 C. Cls. R., 489, Rev. Stat., §§ 236, 1766; Act of March 3, 1875, ch. 149, Sup. Rev. Stat., 185.).
In our view of tbe case it is not necessary bere to pass upon tbe question wbetber or not tbe debt of one partner to tbe United States can be set off against the debt of tbe United States to a firm of which he is one of tbe members, nor wbetber or not tbe Comptroller stated tbe accounts involved in this ease in exact accord with the principles of law applicable to such cases when in controversy There is no doubt that such set-off may be valid and binding when the partners all acquiesce and agree to it, and we think they have done so in tbe present case.
The two partners tacitly assented to tbe settlement when they received notice of the statement of tbe account, and made no objection to it. George Howes, one of the partners, further assented when be accepted and collected tbe drafts, made payable to him alone, for bis divided share. Had be then objected and returned tbe drafts or money the Comptroller might have refused to consummate tbe settlement, and might have left tbe claimants to test the right of set-off in an action at law. But he chose to abide by the settlement until be secured his share of the money, and then repudiate it. Subsequently Jabez Howes ratified and confirmed the settlement and, by an instrument under seal, released all his interest in the claim to th e United States, and the Secretary of the Treasury considered that release in the settlement and compromise of another debt to the United States in which Jabez Howes and others were debtors.
So we have the assent to the settlement of both partner together, and of each partner separately, as well as the fact that each accepted its benefits.
Having successfully resisted the claim of the receiver, who-was seeking to obtain the money for one of the creditors of the firm, and having ratified the settlement and payments made at the Treasury, the copartners now join hands and prosecute this suit to compel the United States to pay the money over again to them jointly.
In our opinion they have no claim in law or equity, and their petition must be dismissed.
Nott, J., was not present when this case was argued and took no part in the decision.