Peelle, J.,
delivered the opinion of the court:
The claimant seeks to recover, under Eevised Statutes, sections 1579 and 1585, the commutation price of the navy ration while he was serving as a mate on board a receiving ship.
Revised Statutes, sections 1408 and 1409, designate the class of enlisted seamen from whom mates may be rated by the Secretary of the Navy, and provides that “ the rating of an enlisted man as a mate * * * shall not discharge him from his enlistment,” while Revised Statutes, section 1410, provides “that all officers not holding commissions or warrants, or who are not entitled to them, except such as are temporarily appointed to the duties of a commissioned or warrant officer, and except secretaries and clerks, shall be deemed petty officers, and shall be entitled to obedience in the execution of their offices from persons of inferior ratings.”
In the case of United States v. Fuller (160 U. S., 593), affirming the judgment of this court (30 C. Cls. R., 108), it was held that “mates are petty officers, and as such entitled to rations or commutation therefor.”
*78 Tbe claimant, therefore, being a petty officer, clearly has a right to recover under that decision, and this was conceded on the trial, so we need not pursue that question further.
The next question is as to the right of the defendants to recover on their counterclaim for the money paid to the claimant, less his actual expenses, on account of mileage.
The right to mileage rests upon acts of Congress and not upon contracts, as was held in the case of the United States v. McDonald (128 U. S., 471, 473), and so the defendants’ right to recover turns on the question as to whether at the time of the travel the claimant was, within the meaning of the mileage acts, an officer in the United States Navy.
Revised Statutes, section 1566, provided that “ an allowance of 10 cents per mile may be made to officers in the naval service and storekeepers on foreign stations for traveling expenses when under orders,” but by the Army Appropriation Act, June 16, 1874 (18 Stat. L., 72), that section was modified as to the allowance for mileage by providing in lieu thereof “ only actual traveling expenses” to persons “holding employment or appointment under the United States,” and it was provided that “all allowances for mileage and transportation in excess of the amount actually paid are declared illegal.”
This latter act seems to indicate that Congress intended either to correct abuses which had grown up or were possible under the former act, or else they desired to curtail expenses; but two years later, in the Naval Appropriation Act, June 30, 1876, section 1 (19 Stat. L., 65), it was provided:
“ So much of the act of June 16,1874, etc., as provides that only actual traveling expenses shall be allowed to any person holding employment or appointment under the United States while engaged on public business as is applicable to officers of the Navy so engaged is hereby repealed, and the sum of 8 cents per mile shall be allowed such officers while so engaged in lieu of their actual expenses.”
Therefore so much of the Act 1874 (supra) as applied to the traveling expenses of the “officers of the Navy” was repealed, and in lieu of their “actual expenses” they are allowed 8 cents per mile. (United States v. McDonald (supra).)
The claimant was paid mileage at this rate, amounting in the aggregate to $297.36, when his actual expenses were only $100.48, so that if he was not an officer within the meaning of *79 the statute last quoted he was paid $196.80 in excess of his actual expenses.
In the case of the United States v. Fuller (supra) the court, after a review of the statutes and holding that “mates are petty officers,” say “that they are distinguished from other petty officers only in the fact that their pay is fixed by statute instead of by the President.” ■
Mates being rated by the Secretary of the Navy “from seamen and ordinary seamen who have enlisted in the naval service for not less than two years” (Bevised Statutes, § 1408), and not being otherwise appointed, can not be classed as officers within the meaning given thereto by the court in the case of the United States v. Mouat (124 U. S., 303, 307), where the court, following the decision in the case of the United States v. Germaine (99 U. S., 508), said “that under the Constitution of the United States all its officers were appointed by the President, by and with the consent of the Senate, or by a court of law or the head of a Department” (members of the Cabinet), and that unless so appointed they are not, “strictly speaking,” officers of the United States.
There is no contention that the claimant was appointed by the President or by a court of law, but he contends that the action of the Secretary of the Navy in rating or promoting him from seaman as provided under section 1408 was of itself sufficient action on the part of the Secretary, as head of the Navy Department, to constitute him an appointed officer, or at least an officer within the meaning of the mileage act. ■
This was substantially the contention in the Fuller Case (supra), but the court held “that mates are officers not holding-commissions or warrants and not entitled to them, but are petty officers promoted by the Secretary of the Navy from seamen of inferior grades.”
Gan it be said, therefore, that petty officers are included in the language of the Act 1876 (supra) as “ officers of the Navy?” We think not. The Congress are presumed to have used the words in the .sense in which “officers” have been defined, and, there being no language in the act conveying a different sense, the court must give to it the meaning the words unequivocally import.
This results in our holding that the money paid to the claimant for the travel set forth in the findings in excess of *80 bis “actual traveling expenses,” allowable under the Act 1874 (supra), was without authority of law.
But at this point the claimant contends that inasmuch as the payment was a mistake in law it can not be recovered back on counterclaim, and particularly as the money paid him on account of mileage is separate and distinct from his ration or salary account.
The money paid him on account of mileage was on the supposition that he was an officer in the strict sense of the word, but, not being such an officer, the money paid, as said in the case of the United States v. Burchard (125 U. S., 176, 180), “was in violation of the law, and he has no right to keep what he thus obtained.”
In the case of Gratiot v. United States (15 Pet., 306, 370) one of the questions was as to the right of the Treasury Department to deduct the pay and emoluments of a general of the Army while acting as chief engineer, and by setting the same off against a certain balance reported against him as superintendent of For.ts Monroe and Calhoun, and on this question the court, speaking by Mr. Justice Story, said:
“ In our judgment the point involves no serious difficulty. The United States possesses the general right to apply all sums due for such pay and emoluments to the extinguishment of any balances due to them by the defendant on any other account, whether owed by him as a private individual or as chief engineer. It is but the exercise of the common right which belongs to every creditor to apply the unappropriated moneys of his debtor in his hands iu extinguishment of the debts due him.”
In the case at bar, however, the claimant’s accounts for mileage, ration, and salary all arise by reason of his position in the Navy, and not with him as a private individual, and so when he brings suit as a petty officer seeking to recover the commutation price of the navy ration he thereby questions the correctness of his account as settled by the accounting officers.
If, therefore, his accounts were not open for the purpose of correction independent of the action, the suit “ itself invites the court to go behind that settlement, to reexamine all the questions arising out ” of his accounts, * * * “ and to correct the error which he insists was committed to his prejudice by the accounting officers of the Government.” (McElrath v. United States, 102 U. S., 426, 441.)
*81 Whatever doubt may have existed heretofore as to the right of the Government to maintain a counterclaim for money paid by its agents or officers without authority of law, or paid through a misconstruction of the law, has now been removed by the decision in the case of the Wisconsin Central Railroad, Company v. United States, 164 U. S., 190, 210 [affirming the decision of this court], where the court in this respect said:
“As a general rule, and on grounds of public policy, the Government can not be bound by the action of its officers, who must be held to the performance of their duties within the strict limits of their legal authority, where, by misconstruction of the law under which they have assumed to act, unauthorized payments are made. (Whiteside v. United States, 93 U. S., 247; Hawkins v. United States, 96 U. S., 89, and cases before cited.) The question is not presented as between the Government and its officer or between the officer and the recipient of such payments, but as between the Government and the recipient, and is then a question whether the lacter can be allowed to retain the fruits of action not authorized by law resulting from an erroneous conclusion by the agent of the Government as to the legal effect of the particular statutory law under or in reference to which he is proceeding.”
Again, in the same case, the court (p. 212) said:
“Reference was made to Barnes v. District of Columbia (22 C. Cls. R., 366, 394), wherein it was ruled, Richardson, C. J., delivering the opinion, that ‘the doctrine that money paid can be recovered back when paid in mistake of fact and not of law does not have so general application to public officers using the funds of the people as to individuals dealing with their own money, where nobody but themselves suffer for their ignorance, carelessness, or indiscretion, because in the former case the elements of agency and the authority and duty of officers, and their obligations to the public, of which all persons dealing with them are bound to take notice, are always involved.’ We concur in these views, and are of opinion that there is nothing on this record to take the case out of the scope of the principle that parties receivin g money illegally paid by a public officer are liable ex ceqiio et bono to refund them.”
Following the decisions we have cited, the defendants are entitled to recover from the claimant the amount paid him on account of travel in excess of his actual traveling expenses, less the amount found due him for commutation of rations, leaving due the United States, as set forth in the findings, the sum of $146.18, for which amount judgment is ordered to be entered in favor of the defendants against the claimant,