Nott, Ch. J.,
delivered the opinion of the court:
At the common law the creditor of .one member of a copart-nership might proceed against that partner’s share of the partnership property, i. e., he might take, say, one-half of the partnership property to satisfy the personal debt of one partner. If the other partner should happen to die and the debtor *478 should thereby become the surviving partner, the creditor could go farther and levy upon the whole of the partnership property and apply it to the satisfaction of the debt. If, on the other hand, the debtor should be the partner who died and there happened to be a similar creditor of the surviving partner to seize the whole of the partnership property and apply it to his debt, then the creditor of the deceased partner would get none of it. In other words, if no one died the creditor could get one-half of the partnership property; if death intervened so as to make his debtor the surviving partner, he could get the whole of the partnership property; if death intervened, so as to make the other partner the survivor, he could get none of it. This was one of the consequences of regarding partnership property as the joint property of the partners with the legal title to the whole absolutely in the survivor.
But here two things are to be remembered — first, that the courts of the common law do not administer the whole of English jurisprudence, and, second, that the Court of Claims is not a court of the common law.
When the narrow and technical jurisdiction of the courts of the common law was insufficient to deal with the actual facts and circumstances of a case and give necessary redress, the parties went into chancery. In courts of equity the surviving partner, instead of being regarded as the sole and absolute owner of the partnership estate, is nothing more or less than a trustee, and the creditors of the firm and the personal representatives of the deceased partner are the cestui que trust. Equity is said to follow the law; but no man ever supposed that a partnership estate was really joint property — that is to say, that the surviving partner became entitled in his own right to have and to hold the deceased partner’s share in the estate to the exclusion of the deceased partner’s representatives.
There was indeed injudicial proceedings a material distinction taken between effects in possession and choses in action. “Gkoses in action, debts, and other rights of action belonging to the partnership,” says Story, “ belong to the surviving partners, and they possess the sole and exclusive right and remedy to reduce them into possession; although, when so recovered, the survivors are regarded as trustees thereof for the benefit of the partnership, and the representatives of the' deceased partner possess in equity the same right of sharing and par *479 ticipating in them which the deceased partner would have possessed if he had been living.” (§ 346.)
In the case now before us, when the deceased partner died there was in this claim nothing known to the common law as property; there was no cause of action, no chose in action, nothing that could be sued upon or reduced to possession. The United States were not liable, for they did not commit the trespass; the Indian defendants were not liable, for they were a tribe, a quasi body politic, and the trespassers were individuals. There was no natural right existing in the partnership except that of pursuing and proceeding against the depreda-tors individually. They were the only wrongdoers known to the common law — to any law. As against both of the defendants in this suit, the Government and the Cheyenne tribe, the only semblance of liability that existed, or exists, is that which has been expressly declared and created by treaties and statutes.
The liability which treaties and statutes create must of course be limited by their terms. The Government mayun-dertake to pay one man and not another; it may undertake to pay all that property was worth or only a fixed percentage of its value; it may limit its liability to the original sufferer or recognize survivorship in his widow or children or legal representatives; it may, through the ordinary ministers of the law — executors, administrators, surviving partners, receivers," assignees in bankruptcy — recognize creditors as beneficiaries; but it can not be compelled to assume an unrestricted liability which shall pass as ordinary property passes.
In none of the statutes relating to Indian depredations are creditors recognized as possessing rights. Under the Indian depredation act of 1891, they are practically excluded from obtaining, payment by the terms of the ninth section. Assignments are declared void, and it is clear that the statute does not contemplate suits by receivers or assignees in bankruptcy.In a word, a creditor can not come into court, directly or indirectly, and oust one who has suffered by Indian depredations and take his place and recover accordingly. Still less can a creditor of a surviving partner of a firm come into court and oust the surviving partner as trustee and recover to' his own use the whole of a claim when half of it, in equity and in contemplation of the statute, belongs to the deceased partner’s widow and children.
*480 And in this case now before us, what is the Government with its counterclaim but such a creditor'! The suit is not primarily against it, but against the Cheyenne tribe, and the recovery will be, primarily, against the tribe. If the tribe satisfies the judgment debt, the liability of the Government as guarantor will fall. The Government will then be a mere judgment creditor of one William H. Moore, and any court of equity in the country would interpose to prevent such a judgment creditor from satisfying his.judgment out of that portion of the partnership fund which belongs to the representatives of the deceased partne'. The Government may recover a judgment here against its debtor, Moore, because the statute gives it that right; but the court can not deduct that recovery from the judgment which it will render against the Indian defendants. When the time of payment comes the statutes give the accounting officers of the Treasury abundant authority to set off an indebtedness due from a claimant to the United States against a judgment in his favor. (Rev. Stat., secs. 236, 1766; Act 3d March, 1875, 18 Stat. L., p. 481; Howes’s Case, 24 C. Cls. R., 170; .Pennebaker’s Case, 29 id., 35.)
If the conditions of this case were reversed — if the Government were asserting a demand against the deceased partner— the monstrous injustice of taking the common-law rule as an entire system of jurisprudence, which it was not, and holding that the Government could not maintain its counterclaim because its debtor had died, and that the whole of the partnership’s estate must be regarded as belonging to the surviving partner in his own right, would be too apparent to need demonstration.
When these cases were last before the court (32 O. Cls. R., 368) all that the court determined was that the demurrer of the claimant Labadie, administrator of the surviving partner, to the* Government’s plea of set-off was bad, and that the order overruling the demurrer, and the judgment, if any, rendered on the demurrer, should be without prejudice to the claim of Kerr, administrator of Mitchell, the deceased partner. The present motion of the Government for a rehearing and a review of the decision is in effect, though not in form, directed against the latter part of the order then “made. It was the intention of the court, then, to maintain for the widow and children of the deceased partner a foothold in court for the presentation of their equitable claim by means of the suit instituted by the *481 administrator of the deceased partner’s estate. 'Whether, when the two cases come to a final hearing, judgment will be rendered in each, or judgment will be rendered in the case of the surviving partner in such form as will preserve the rights of the other parties, it is not necessary for the court now to decide. Therefore the order heretofore made will stand.