Downey, Judge,
dissenting:
I shall not discuss the principle upon which I predicate my dissent from the conclusion of my associates at a length commensurate with its importance for, while I deem lengthy discussion unnecssary, the importance of the principle is hardly to be overstated. It is not limited to the result of this case, for it must control a class of cases, and, as it is sustained or otherwise is there preserved or destroyed an established, recognized, and necessary governmental system as old almost as the Government itself.
The plaintiff, it is rightly said, was not a major during the period from October 18, 1918, to February 17, 1919. It *207 is not held in the majority of opinion and, in my judgment, could not be held, if of any importance, that he was a major de facto. He was a captain and became a major by subsequent promotion to rank as such from February 17, 1919. He was paid during this period while a captain the pay of a major, $240.19 more for the period than the captain’s pay which he was entitled to receive, and afterwards, from his pay as a major after he became in fact a major, this excess payment made to him while a captain was deducted.
The majority opinion says Avith undoubted correctness that he could not sue in this court for a major’s pay when not a major. He in fact sues, as stated in the fifth paragraph of his petition, for “ the pay and alloAvance once thus paid to him and afterwards deducted,” etc., referring un-dotibtedly to the excess of major’s pay paid to him when a captain, apparently just such a suit as the court has said he could not maintain. But the court treats the action as one for recovery of money due him as a major and deducted to reimburse an overpayment made when a captain. I do not care to take issue Avith the court’s adoption of this vieAv of the case which, seemingly, can amount to little more than the attempted attaching of an identity to money paid and money withheld while the principle must remain the same. It is said in concluding the majority opinion that “ the plaintiff, being entitled to the pay of a major at the date of his discharge Avas entitled to be paid the money due him as major, and he could not have been required, in the circumstances of this case, to return money AAdiich the Government claimed from him on account of money which it had overpaid him, such overpayment having been made prior to the time of his having been regularly appointed major on February 17, 1919.”
The circumstances of the case for consideration are, of course, the facts of the case. The inference, attempting to interpret the language with fairness, is that there is a certain dividing line in an officer’s accounts, predicated upon his rank, behind which you may not go in the adjustment thereof. Or in other words that, serving in one rank, his pay in that rank, when earned, is immune from checkage or deduction because of an indebtedness to the Government *208 accruing in a lesser rank. Such or any similar distinction seems to me wholly unwarranted and subversive of the established governmental right of deduction.
It is conceded that there was an overpayment to the plaintiff and, being an overpayment of a statutory salary, it was an illegal payment. The United States had a right to recover it. Having in its hands funds due the plaintiff by way of after accrued salary, it had a right to recover it by a deduction therefrom. That the overpayment was made before the plaintiff in fact became a major, but was in fact a cai^tain and was entitled to be paid only as a captain, and was deducted from pay due him after he became a major is wholly immaterial. The account was open. Such an account is never a closed account until separation from the service. There is no barrier erected between the accounts of an officer as a captain and his accounts as a major, after promotion, back of which you may not go for purposes of adjustment. The situation is the same whether he was overpaid before or after he became a major.
This checkage or deduction to reimburse the United States for an overpayment to one of its officers was not only a right of the United States but it was the duty of the proper officers to resort thereto in the protection of governmental interests to the end that money improperly paid to an officer be recovered and proper reimbursement made. No other theory can possibly work out a proper settlement of pay accounts between the Government and its officers. In no other way, in many instances, could the Government be protected against illegal payments and the retention of their fruits by the recipient. Lawsuits, even if efficacious, should not be a necessary resort where the Government has within its own hands the means for expeditious and just settlements. The Supreme Court has commended the practice because of its avoidance of “ multiplicity of suits and circuity of action.”
There are authorities cited in the majority opinion. The presumption must be from their citation that they are relied on as sustaining the conclusion reached. I refer simply to the fact that they all treat of ch facto officers, whatever their merits may be otherwise. In each quotation in the majority *209 opinion, presumably the applicable gist of the case, reference is made to an officer de facto, and the controlling influence of that assumed status is strongly indicated in the short quotation from the Badeau case, in which the Supreme Court used the very significant word “ inasmuch,” a word full of meaning in the connection used.
In other classes of transactions where the relations of the parties in the circumstances may seem to offer more room for objection to the practice than in a case such as this, the practice of deduction has met with emphatic approval by the highest authority, the accounts being held to be open, and it may be said, referring thereto in the language of some of the older cases, that “the practice of set-off where one party is both debtor and creditor ” has prevailed for so long that one hesitates to attempt to state its origin. Judge Richardson, one of the able former judges of this court, writing more than forty years ago, referred to it as a practice which had prevailed “ from an early day ” and as “ sustained by judicial decision as legal and proper without any express statute on the subject.” It is hardly conceivable that it is now, as a rule of recognized procedure, to be impaired or abandoned.
I regard it as unnecessary to quote from or discuss in detail the authorities. See United States v. Burchard, 125 U. S., 176, 181; Gratiot v. United States, 15 Pet., 336; Wisconsin Central R. R. Co. v. United States, 164 U. S., 190, and cases cited; Bonnafon v. United States, 14 C. Cls., 484, 489; Taggart v. United States, 17 C. Cls., 322, 327; Howes v. United States, 24 C. Cls., 170, 185; Baxter v. United States 32 C. Cls., 75-81-2; Grand Trunk Ry. Co. v. United States, 252 U. S., 112, 121.