Richardson, Ch. J.,
delivered the opinion of the court:
The Secretary of the Treasury, in his letter transmitting this case, requests the court to give the Department its opinion on the following points, suggested by the First Comptroller of the Treasury:
(1) Whether assignments or transfers of claims of witnesses are valid .under the law.
(2) Whether purchasers, assignees, or transferees of such claims have such rights as make it obligatory on the accounting-officers to state and certify accounts in favor of such purchasers, assignees, or transferees.
(3) Under the law is a marshal authorized to pay witness fees to any other persons than those in whose favor they have been taxed and allowed by the court'?
The facts of the particular case in which these questions arise, fully set out in the findings, may be more concisely stated, as follows:
At a term of the United States District Court for the first judicial district of New Mexico, a large number of witnesses were *92 summoned and attended on belialf of the United States. The court made orders directing that there be allowed and paid to them for travel and attendance certain sums fixed by the order, varying from about $8 to $34.
The clerk gave to each one.a certified copy, under seal of the court, of the order directing payment to him. Forty-six of these witnesses presented their certificates to the marshal of the district, who was unable to pay them for want of public funds in his hands. He, however, allowed the witnesses to sign his pay-roll, receipting for payment of the respective sums due them, and he indorsed on the certificates the fact that such receipts had been so signed. This was done with the understanding that the payees would sell, transfer, and indorse the same, and that the marshal would pay them to the indorsees as soon as he received public funds for that purpose. Before receiving such funds he went out of office. In the mean time Rafael Lopez, the present claimant, had purchased the forty-six certificates for valuable consideration, had taken assignments by indorsements thereon, and had presented them to the marshal for payment, but they had never been paid.
The marshal on settling his accounts with the Government returned his pay-rolls to the accounting officers of the Treasury, making no claim for himself on account of the forty-six receipts. The claimant, Lopez, forwarded the certificates to said officers, and asked for payment through the Treasury Department. It does not appear that the original payees have made further claim for payment to them, nor repudiated in any way their sales and transfers, nor that there are any claimants to the money adverse to said Lopez.
The difficulty which the Comptroller finds in stating an account in favor of Lopez, the purchaser of the certificates, arises from the terms of the following section of the Revised Statutes, as interpreted by the Supreme Court in the cases of Gillis v. The United States (95 U. S. R., 407), and Spofford v. Kirk (97 U. S. R., 484).
u Sec. 3477. All transfers and assignments made of any claim upon the United States, or of any part or share thereof, or interest therein, whether absolute or conditional, and whatever may be the consideration therefor, and all powers of attorney, orders, or other authorities for receiving payment of *93 any such claim, or of any part or share thereof, shall be absolutely null and void, unless they are freely made and executed in the presence of at least two attesting witnesses, after the allowance of such a claim, the ascertainment of the amount due, and the issuing of a warrant for the payment thereof.”
u Such transfers, assignments, and powers of attorney must recite the warrant for payment, and must be acknowledged by the person making them before an officer having authority to take acknowledgments of deeds, and shall be certified by the officer; and it must appear by the certificate that the officer, at the time of the acknowledgment, read and fully explained the transfer, assignment, or warrant of attorney to the person acknowledging the same.”
“A great deal has been said and written in regard to that section and the previous acts embodied therein,” says the First Comptroller in one of his communications filed in this case; and it is well known that the accounting officers and the public, doing business with the Government, have been much embarrassed by it. A careful review of the subject and of the recent decisions of the Supreme Court will show that the true interpretation of the statute has now become authoritatively settled, and that the rights of parties affected by it, and the powers and duties of the accounting officers under it, have been made clear.
Soon after the passage of the act of February 26, 1853, ch. 81 (10 Stat. L., 170), now said section 3477 of the Eevised Statutes, the then First Comptroller, Elisha Whittlesey, issued an elaborate circular explaining his interpretation of the act and the practice of the Department to be adopted under its provisions. The opinions of the Supreme Court in the Gillis Case, and in the case of Spofford v. Kirk, seemed to be in contravention of the views expressed in that circular and of the prevailing practice of the Department.
The First Comptroller, immediately upon the publication of those opinions, laid a copy of that circular before Mr. Justice Strong, who had delivered the opinion of the court in those cases. The latter, after a careful examination, indorsed his concurrence in the construction therein given to the act, and the same was filed among the archives of the Treasury Department. The following is a copy of the circular, with Mr. Justice Strong’s indorsement thereon:
*94 [Circularas to powers of attorney, transfers, and assignments of claims.]
“Treasury Department,
“First Comptroller’s Office, “May 2,1853.
“ The attention of all persons interested is invited to the following acts of Congress: ”
[Here was inserted a copy of tlie statute.]
“The following forms may be observed:
“ (1) Whereas by virtue of an act of Congress [or of a resolution of Congress, as the case maybe], approved on the -
day of-, in the year-, entitled (here give the title
of the act or resolution), there has been allowed to lne, A. B.,
the sum of-dollars and-cents, for the payment of
which a warrant has been issued by the Secretary of the Treasury. Now, know all men by these presents, that I, A. B., of
-, in the State of-, the claimant above referred to,
do hereby make, constitute, and appoint-, of-, in
the-of-, my true and lawful attorney, for me, and
in my name, to collect and receive the aforesaid claim from the proper officer or officers of the Treasury of the United States, and to give proper receipts and acquittances for the same, with power to the said attorney to substitute an attorney or attorneys under him for all or any of the purposes aforesaid.
“ In witness of which I have hereunto set my hand and seal this-day of-, in the year-.
“ Signed, sealed, and delivered in the presence of—
“ (2) State of-,
“ County of-, ss :
“Be it remembered, that on the-day of-, in the
year-, A. B., the person described in the foregoing instru-
ment or power of attorney, personally came before me, the undersigned, and on said instrument being read over to him and fully explained by me, he acknowledged that he executed the same for the purpose therein stated. And I further certify that I am an officer having authority to take the acknowledgment of deeds within said county.
“ (3) If the acknowledgment is taken before a State or county officer not having an official seal, his official character and signature should be attested by the certificate of a clerk of a court of record of the proper county, under his seal of office.
“(4) In case of an assignment of a claim, or of a part thereof, the same form of recital of the facts, aud reference to the act or resolution of Congress, and the same form of attesting the assignment, may be adopted.
*95 “(5) The question arises, to what classes of cases and demands do the statutes apply?
“(6) The act of July 29th, 1846, applies only to claims allowed by special acts or resolutions of Congress specifying the-claim and the claimant, and directing the amount to be paid. The act of February 26th, 1853, applies to all claims against the United States, whether allowed by special act of Congress or arising under general laws or treaties, or in any other manlier.
“ (7) The last statute is highly penal in many of its provisions, and therefore should be construed strictly, and the word ‘claim’ must be held to have the same meaning in the first section, where it relates to transfers, assignments, powers of attorney, and orders, as in the sections which are penal. The words of the act expressly exclude it from operating upon or affecting any transfer or assignment of a claim, or of any portion thereof, prior to the approval of the act.
“Every draft or order directing the payment of money to the-payee, or his order, if it does not state that it is to be received in trust for the drawer, is in law a transfer of the amount therein specified to the payee. Such orders and drafts drawn, before the approval of said act can not be affected by it, though they may be affected by the act of July, 1846, if they were allowed by special act or resolution.
“Assignments of interests in a claim contained in powers of attorney to receive the whole claim, executed before the 26th. of February, 1853, will be good, if the claim do not come within the terms of the act of July 29th, 1846; but no more than the amount assigned can be received under the power, if it be not executed in conformity with the requirements of those acts..
“(8) Powers of attorney not containing an assignment confer on the attorney no vested right to the fund or any portion of it; and hence such powers executed before the approval of either of those statutes will be affected by it, if the claims to-which they relate are of the character included in such statute.
“(9) A claim is defined in Jacob’s Law Dictionary, title Claim: ‘Claim, a challenge of interest in anything that is in. the possession of another, or at least out of a man’s own possession, as claim by charter, by descent, etc. In Plowden’s Com., 359, Dyer, C. J., is said to have defined claim to be a challenge of the ownership of property that one hath not in possession,, but which is detained from him by wrong.’
“(10) The same definition substantially is given in Tomlin’s-Law Dictionary, and in Bouvier’s Law Dictionary, title Claim.
“(11) The word claim has been sometimes used in a vague-manner, as including all personal demands; but the most general sense in which it is used, and the one that is most accu *96 rate, limits it to demands that are disputed or uncertain in their nature. A debt admitted to be due, or evidenced by a judgment, bond, promissory note, bill of exchange, or other instrument in writing, the execution and validity of which is not disputed, is of a higher nature than a mere claim.
‘‘Uncertain damages arising from a tort, or from the violation of a contract, constitute a claim, not a debt. The rights of American citizens to compensation for injuries received from the French Government prior to the treaty for the purchase of Louisiana are usually spoken of as French claims. So also the claims of American citizens for injuries received from the Government of Mexico prior to the late war, which were adjudicated by commissioners, were properly called claims, and had not the certainty and essential character of debts. The claims of citizens to be indemnified for depredations committed upon them by Indians are properly called claims, and could not with propriety be called debts. So pensions and bounties subsequently granted to persons who have served in war, though founded on equitable considerations, yet they did not constitute legal debts, and the right to the pension or bounty granted is but a claim and not a debt.
“(12) A salary account is not, strictly and correctly speaking, a claim; it is a demand of a higher nature and of a more definite and certain character than a mere claim; it constitutes a debt. So also an account for any other services rendered in pursuance of law, or rendered under a contract made in pursuance of law, constitutes a debt and not a mere claim.
“So also an account for materials, provisions, and supplies of any kind, furnished for any of the departments of the Government, in pursuance of a contract legally made, constitutes a debt of a higher nature than a mere claim.
“But if the party claims an extra allowance beyond what the law or the terms of the contract give him, founded on equitable considerations, such as the difficulty of the service, the alleged hardness of the contract, and the insufficiency of the compensation, the amount claimed as an extra allowance is properly a claim, and not a debt.
“If a dispute arises in relation to the commencement or termination of a salary the annual amount of which is fixed by law, and the accounting officers disallow a portion of the demand, the amount so disallowed becomes a mere claim.
“ So in relation to other accounts; when the accounting officers act upon an account, disallow some of the items as illegal or overcharged, and allow the remainder, the items so disallowed lose the character of a debt, and become a mere claim.
“(13) The .dividing line between debts and mere claims is observed with tolerable accuracy in prescribing the duties of committees in Congress. *97 bring in bills to provide for the payment of all debts due from the United States, as well as for the ordinary current expenses of the Government, and to pay all such claims as have been recognized by law; that committee has nothing to do with claims which the laws do not recoguize as legal and existing.
*96 “It is the business of the Committee of Ways and Means to
*97 Opinion ortho court.
“On the contrary, claims for uncertain damages, for extra compensations, for pensions, and for depredations, trespasses, and injuries, are usually referred to the Committee on Claims and other committees designated by the rules to-examine, report upon, and bring in bills for the payment of such sums as the appropriate committee may deem just.
“(14) It has been customary for salary officers, contractors, .and other creditors of the United States to draw orders or drafts on the Government, which they negotiate, and thus realize the amount due them before the accounts are passed. This is often a great convenience to persons living at a distance, on the Pacific coast or anywhere west of the Mississippi. Salaries are paid quarterly, but the account for a quarter can not be passed until after the end of the quarter. Heretofore drafts have been frequently drawn for a quarter’s salary, or for a portion of it, and sent here before the end of the quarter; and when so received the account has been passed, and the warrant issued to the owner of the draft as the assignee of the salary.
“If the statute of February last should be applied to salary accounts, no such drafts could be drawn until after the end of the quarter, after the account was passed, and a warrant on the Treasurer issued for the payment thereof. The result would be that many officers would be compelled to wait from 30 to 60 days after the end of each quarter in order to receive warrants on the Treasurer, or the Treasurer’s drafts, before they could realize any portion of their salary; and the delay and inconvenience to many contractors, creditors, and employós of the Government would be still greater.
“I do not believe that Congress intended that the statute should be applied to any such cases.
“ (15) What was the evil for which the remedy was designed 1 A reference to the terms of those statutes, and the practice of agents in proseen ting claims before Congress, indicate the evil and the object of the remedy.
‘■Agents were in the habit of getting general powers of attorney to prosecute before Congress or the Departments uncertain and doubtful claims, and to obtain and receive the amount which might be allowed upon them; and in many instances assignments were obtained of large claims for very small sums from persons not knowing their rights.
“In such cases unsuspecting persons were put into the hands and power of sharp and cunning agents and shrewd, unscrupulous speculators; the claimant often had no means of protecting himself against the false representations and deceptions of *98 agents and purchasers, and the agent might misrepresent the amount collected.
“Hence the requirements that the power of attorney, draft, assignment, or transfer should refer to the statute under which the claim is allowed, and that the amount due should be ascertained, and a warrant issued for the same, before any such power of attorney, draft, transfer, or assignment can be legally made.
“It is obvious that this is required by the statute in order that the claimant may fully understand the extent of his rights and the amount allowed to him, before he can legally assign or transfer the same, or authorize any other person to receive the amount.
“But no such precaution is necessary in relation to salary accounts, accounts for services rendered, or supplies furnished, or for any other form of debt about the amount of which there has never been any dispute. The officer or creditor in all such cases knows the precise amount, or very nearly the amount, due him ; and no good can arise, but often very great inconvenience and evil, from imposing on him restrictions in relation to the time and mode of transferring and assigning the same, or of making powers of attorney for the receipt thereof.
“(16) From various causes soldiers may not have been paid all that was due them. When the rolls are examined by the Second Auditor, the amount found due is reported to the Second Comptroller, and, if he admits it, he signs the report; and any paymaster of the Army of the United States is authorized to pay the amount so found .and certified. Certificates of this character are frequently assigned by the soldiers to avoid the loss of time and expense incident to traveling a distance to present them personally. The paymasters pay them and include them in their accounts.
“ (17) Similar balances are found due to sailors by the Fourth Auditor, and reported to the Second Comptroller, and if he concurs he signs the report, which authorizes a Navy agent to make payment to the sailors or to their assignees. It is not known that any imposition, fraud, or extortion has been practiced in any of these cases.
“ (18) Warrants are not issued to pay these and similar balances ; advances are made to the paymasters, and Navy agents generally, without specifying who are to be paid.
“ (19) In making payment to a contractor for transporting the mail, no warrant is issued in his name. The contractors collect of the postmasters, orthey draw orders on the Department, or the Departments sends them drafts, aeeordingto the circumstances of the case. Collections from postmasters are generally by the carriers, on authority given by the contractors, the Department having designated the offices from which collections are to be made.
*99 “(20) Orders are drawn by mail contractors to pay for expenses necessarily to be incurred in transporting tbe mail, and generally to obtain ,a credit in advance. They are lodged by the drawee or assignee with the Auditor, to be paid when due if the Department shall then be indebted to the contractor.
“(21) The stocks of the United States are owned and held throughout the civilized and commercial parts of the world. Interest is to be paid thereon, by agreement, semi-annually. In almost,every instance it is paid on powers of attorney. A warrant is not drawn to pay any particular person, but seasonable advances are made to the assistant treasurers, or other persons designated, to pay the interest, in different sections of the United States. Frequently powers of attorney are executed for collecting interest without any limitation as to time.
“(22) American consuls are required bylaw, and by the directions of the Secretary of State, to relieve indigent and distressed American seamen in foreign countries. Having incurred expenses for their relief, they are instructed to draw on the Secretary of State, and to accompany the drafts by accounts and vouchers. The drafts are generally in favor of the business correspondents of the consuls in the principal cities, and may have been endorsed before they reached the State Department. If sustained by the accounts and vouchers they are paid to the holder, on the requisitions of the Secretary of State, directed to the Secretary of the Treasury; and the accounts of the consuls are thereafter settled in the due course of business by the accounting officers.
“ (23) Consuls are authorized and required by law to send destitute seamen to the United States, and they are empowered to conti act with masters of American vessels to transport such seamen at a price to be agreed upon, not to exceed ten dollars for each one. To enable the master of the vessel to obtain the payment specified, the consul gives him a certificate stating the names of the seamen placed on board and the amount to be paid for their passage. On the arrival of the vessel in a port of the United States, the collector of the customs endorses on the certificate that such seamen have arrived. The master of the vessel, if not the owner of it, assigns the certificate to the person or persons entitled to the pay, and an accouut is reported by the Fifth Auditor in favor of the assignees.
“(24) If those statutes should be applied to the cases mentioned, and to those of like character, the business of the Government would be arrested to a great extent, to the injury of individuals, in violation of contracts and of the public faith.
. “(25) My conclusion is, that ordinary debts and accounts against the Government, which have been legally contracted and never disputed, are not claims within the meaning of those statutes, and that the statutes do not apply to them, but apply to uncertain damages and losses, extra allowances, pen *100 sions, equitable demands, claims for the correction of alleged errors, claims for a return or repayments of duties, items of account which have been rejected or are disputed, and such classes of cases as are usually referred to the Committee on Claims and to committees other than the Committee of Ways and Means.
u_

i

“ GomftrollerP
[Endorsement by Mr. Justice Strong.]
“ With no authority to speak for the court, I am of opinion that the construction of the act of 1853 given in this circular is correct. Perhaps the language of the court in United States vs. Gillis (95 U. S. Reports) was not sufficiently limited. It had primary reference to the case then before the court; but certainly the word ‘ claim,’ as used in the act, ought not to be held to embrace liquidated debts.
“ W. Strong.”
In McKnights Case (13 C. Cls. R., 292) the defendants filed a counter claim against the claimants to recover back money paid to them as assignees of one Hart upon an assignment declared void by the act of 1853. The original assignors had never revoked or repudiated this assignment. We held that the Treasury having recognized the assignment and paid the amount due on an accounting to the assignee, no action would lie to cover it back, saying in our opinion:
“If parties allow money due them to be paid to others with their knowledge and consent, it is an adoption aud ratification of the act which they can not afterwards set aside, and such payment is a valid discharge of the debt as between the Government and the creditor.”
Cn appeal the Supreme Court affirmed the judgment of this court, and sustained our views, saying in its opinion, delivered by Mr. Justice Strong:
“It is true the assignment was contrary to law, aud therefore a nullity, but there was nothing contrary to morals or conscience in the payment or receipt of the money. The facts were all known. There Was no indirection, concealment, or improper purpose on either side.
“Although the petitioners had no claim against the United States, they had a valid claim against Hart. The money was received iu payment of his debt, and discharged it to that extent. He is estopped by his receipt from setting up any claim against the Government.- It does not appear that he has ever complained.” (98 U. S. R., 185).”
*101 This case was followed by that of Bailey v. The United States (15 C. Cls. R., 490), where the force of assignments was again considered, and the court, in its opinion, by Nott, J., used the following language:
“The statute in this case (act 26th February, 1853, 10 Stat. L., 171) does not attach any turpitude to the assignment of a claim or the giving of a power of attorney such as was .given by the claimants. It does not prohibit the giving of such assignments and powers, nor prohibit the officers of the Government from acting upon them; it merely declares them to be void. * * * '
“We are of the opinion that where a payment is made upon a power of attorney properly authenticated, actually given, and sufficiently comprehensive in terms, its validity or invalidity under the statute is no longer in question, and no party to the transaction is at liberty to deny the effectiveness of the payment. Such powers of attorney belong to that class of obligations which may be void while they remain executory, but which are to be treated as valid when they have become executed. Courts, can not enforce them; but if the parties voluntarily give •effect to them, sound morality forbids that they should be allowed to question the effectiveness of what they have themselves accomplished.”
This case was appealed, and the Supreme Court fully sustained the views of this court, as appears by the following extract from the'opinion delivered by Mr. Justice Harlan (109 U. S. R., 438):
“The question is, whether payment to one who has been authorized to receive it by the power of attorney executed before the allowance of the claim by the act of Congress, was good as between the Government and the claimant, where, at the time of payment, such power of attorney was unrevoked.
“If, in respect of transfers or assignments of claims, the purpose of the statute, as ruled in Goodman v. Niblaeh (102 U. S. R., 2556), was to protect the Government, not the claimant in his dealings with the Government, it is difficult to perceive upon what ground it could beheld that the statutory inhibition upon powers of attorney, in advance of the allowance of the claim and the issuing of the warrant, can be used to compel a second payment after the amount thereof has been paid to the person authorized by the claimant to receive it.
“A mere power of attorney given before the warrant is issued — so long at least as it is unexecuted — may undoubtedly be treated by the claimant as absolutely null and void in any contest between him and his attorney in fact. And it may be so regarded by the officers of the Government whose duty it is to adjust the claim and issue a warrant for its amount.
*102 “ But if those officers chose to make payment to the person whom the claimant, by formal power of attorney, has accredited to them as authorized to receive payment, the claimant can not be permitted to make his own disregard of the statute the basis for impeaching the settlement had with his agent.
“ To hold otherwise would be inconsistent with the ruling heretofore made, aud with which, upon consideration, we are entirely satisfied, that the purpose of Congress by the enactment in question was to protect the Government against frauds upon the part of claimants and those who might become interested with them in the prosecution of claims, whether before Congress or the several Departments.
“ The title of the act of 1853 suggests this purpose. It is to prevent frauds upon the Treasury.
“An effectual means to that end was to authorize the officers of the Government to disregard any assignment or transfer of a claim, or any power of attorney to collect it, unless made or executed after the allowance of the claim, the ascertainment of the amount due thereon, aud the issuing of the warrant for the payment thereof.”
The next and latest case involving the interpretation of the statute is that of Freedman’s Bank v. Shepherd with Shepherd v. Thompson (127 U. S. R., 494). In that case the United States was lessee of certaiu real estate, and the lessor had made assignments of rents under the lease somewhat complicated by the facts. The validity and effect of those assignments, and the application of the money paid upon them by the United States, was directly in issue. The court in its opinion, delivered by Mr. Justice Harlan, said:
“ Here the officers of the Government chose to recognize the' assignment, and of their action neither Bradley nor Shepherd nor Shepherd’s trustees can rightfully complain.
“ The Government is acquitted of any liability in respect to the claim for rent, for its officers have acted in conformity with the directions, not only of the original claimant, but of his as-signee, Shepherd, and of Shepherd’s trustees.
“ The simple question is whether the money received from the Government shall be diverted from the purpose to which Bradley, Shepherd, and Shepherd’s trustees agreed in writing that it should be devoted, namely, to the payment of the debts Thompson holds against Shepherd. This question must be answered in the negative; and in so adjudging we do not contravene the letter or the spirit of the statute relating to the assignment of claims upon the United States.”
The result of all these decisions is, in our opinion, that while such assignments, transfers, and powers of attorney to collect *103 money due from the United States are void if the assignors or principals revoke and repudiate them before payment is made upon them, still the accounting officers of the Treasury may recognize them and may state accounts in favor of the assignees or attorneys in fact, and payment may be made at any time before revocation, and that such payments are binding and conclusive upon the parties and are a complete discharge of the indebtedness as against the assignors.
The practical effect of the law, thus interpreted, is that such assignments and transfers, whatever be the consideration, are mere naked powers of attorney, revokable at pleasure. Creditors may avail themselves of such instruments in order to have money due them from the United States paid to such persons and in such manner as they may direct, in like manner as they may transact business with individuals, provided there be no controversy and .the accounting officers see no grounds for suspicion of fraud or other satisfactory reason for refusing to recognize the transfers. But the Government can not be involved in controversies between private parties.
As to marshals, the Revised Statutes provide:
“ Sec. 855. In cases where the United States are parties the marshal shall, on the order of the court, to be entered on its minutes, pay to the jurors and witnesses all fees to which they appear by such order to be entitled, which sum shall be allowed him at the Treasury in his accounts.”
In making payment of witness fees marshals .must be gov- • erned by the general laws as to powers of attorney and assignments applicable alike in all cases.
In the present case the marshal whose duty it was to pay these fees has gone out of office, has returned his pay-rolls to the Treasury Department, and the Department is in possession of the certificates given to the witnesses and by them indorsed to the claimant.
It will no doubt be convenient for all parties concerned that payment be made directly from the Treasury instead of through a marshal. We find nothing in the facts to prevent the accounting officer Irom stating an account in favor of the claimant, Lopez, for the amount of his demand, making payment to him upon a warrant in the usual manner.
Upon the points specifically presented by the Secretary of the Treasury we make the following conclusions of law:
(1) A marshal may pay witness fees to persons other than *104 those in whose favor such fees are taxed by the court, upon the unrevoked and undisputed orders, assignments, or transfers thereof by the witnesses.
(2) Such unrevoked and undisputed orders, assignments, and transfers are so far valid under the law that if payment be made thereon the assignors will be estopped from setting up any other claim on their behalf, and such payment will be a valid discharge of the indebtedness.
(3) While the accounting officers of the Treasury may state and certify accounts in favor of such purchasers, assignees, or transferees whose assignments are not controverted, they may exercise their own discretion in the matter, with due regard to the convenience of parties and the Government. Such assignees have no rights which make it obligatory upon the accounting •officers to so state accounts in their favor.
The clerk will certify these findings of facts, conclusions of law, and opinions to the Treasury Department for its guidance and action, as provided in the act under which the claim has been transmitted to the court.