BURKE v. DAVIS.

(Circuit Court, N. D. Illinois. July 21, 1894.)

1. CUSTOMS DUTIES—CONSIGNMENT TO AGENT—VALIDITY.
   Act June 10, 1890, § 1, providing "that all merchandise imported into the United States shall, for the purpose of this act, be deemed and held to be the property of the person to whom the merchandise may be consigned," does not prohibit the consignment of imported goods to another than the real owner.

2. CLAIMS AGAINST UNITED STATES — JUDGMENTS AGAINST COLLECTORS FOR AN EXCESS OF DUTIES.
   Judgments against collectors for an excess of duties collected are not "claims upon the United States," within the meaning of Rev. St. § 3477, which makes void transfers and assignments of any claim upon the United States, unless freely made and executed in the presence of at least two attesting witnesses after its allowance, etc.

3. SAME—ASSIGNMENT ORDERED BY COURT.
   Even if such judgments are claims upon the United States, the statute does not affect assignments to the real owner of the judgments, made by an agent in whose name they were rendered, by order of a court, since such statute applies only to voluntary assignments.

4. EQUITY — JURISDICTION TO COMPEL ASSIGNMENT OF JUDGMENTS FOR EXCESS OF DUTIES.
   Where an importer obtains judgments, in the name of his agent, against a collector, for an excess of duties collected on goods imported in the

name of such agent, and the agent refuses to assign the judgments to his principal, the latter has no adequate remedy at law, and a court of equity has jurisdiction to compel such assignment.

This was an action by William H. Burke against Frank L. Davis to compel defendant to assign to plaintiff certain judgments obtained by plaintiff, in defendant's name, against a revenue collector, for an excess of duties collected on goods imported by plaintiff in defendant's name. Heard on demurrer to the bill. Demurrer overruled.

Richard S. Thompson, for complainant.
Chas. H. Aldrich, for defendant.

BUNN, District Judge. This is a general demurrer to a bill in equity. The facts, as they appear by the bill of complaint, are substantially these: The complainant is a citizen of London, England, and is engaged in the business of manufacturing, importing, and selling marble and mosaic decorations for buildings; having establishments at the city of Chicago, Illinois, Buffalo, and New York, in the state of New York, and at London, England, and Paris, France. In August, 1888, he employed the defendant, Davis, as his clerk and agent in and about his business at Chicago. That, in the course of complainant's business at Chicago, it became necessary for the complainant to be absent from Chicago much of the time, and in consideration thereof he appointed said Davis his agent at Chicago, to receive importations of marbles, mosaics, and merchandise which he was importing from time to time to Chicago, from his London and Paris establishments, for use in his Chicago business. That said Davis had no interest whatsoever in said importations or business, except as clerk and agent of complainant. That in the years 1889 and 1890 he made various shipments of said goods from Paris and London in the name of said Davis as consignee. That there arose differences between the complainant and the collector of the port of Chicago in regard to the proper duties to be paid upon such goods. That thereupon the complainant paid the duties claimed and charged by the said collector, under protest, in conformity to the law. That said protests were made in the name of said Davis, he being named as consignee, though having no interest in the property or business. That complainant took appeals to the secretary of the treasury, in the name of said Davis, from the decision of the collector fixing the proper duties to be paid, and that the decisions of the collector were affirmed by said secretary of the treasury. That thereupon complainant, in the name of said Davis, took appeals from the decision of the secretary of the treasury to the United States circuit court for the northern district of Illinois. That he prosecuted said several appeals to decisions in said United States circuit court, and that judgments were therein rendered in favor of the said Frank L. Davis against Anthony F. Seeberger, defendant, for various sums, amounting in all to $9,000 or thereabouts, for excessive duties paid upon said goods by him, the said complainant. That said Davis

had at no time any interest in said suits or appeals, or in the said business, except as the clerk and agent of the complainant, but that the complainant was solely interested therein, and that the judgments so obtained against the collector are the property of complainant, the defendant being merely a trustee and agent of the complainant in the procurement thereof; but that, nevertheless, the said defendant has quit the service of the complainant, and refuses, though so requested, to assign such judgments to the complainant. This suit is brought to restrain the defendant from assigning said judgments to third persons, and to require him to assign them to complainant. The defendant demurs to the bill, assigning three general grounds of demurrer, which will be noticed in their order.

First. It is claimed there was a violation of a positive statute of the United States in having defendant named as consignee when he was not in fact the owner, and that, therefore, there can be no relief granted to the complainant. The provision of law referred to is found in section 1 of the customs administrative act of June 10, 1890, which is as follows:

"That all merchandise imported into the United States shall, for the purpose of this act, be deemed and held to be the property of the person to whom the merchandise may be consigned."

It is evident from a reading of the provision that it can have no such effect as is claimed for it by counsel. There is no prohibition against having goods consigned to a person other than the real owner. The provision is that, for the purposes of the tariff act, the person named as consignee shall be deemed and held to be the owner of the property, whether he is in fact the owner or acting only as agent, as the defendant acted in this case.

Second. It is contended by the defendant that these judgments are claims against the United States, the assignment of which is prohibited by section 3477, Rev. St. U. S., and that equity will not compel the defendant to do what the law has prohibited him from doing voluntarily. This ground of demurrer, though seemingly more plausible, is no whit sounder than the other. These judgments are not claims against the United States, within the meaning of that section. They come neither within the letter nor the spirit of that provision. The purpose of that provision was to prevent embarrassment on the part of the government by the trading in claims against the government. Section 3477 provides that:

"All transfers and assignments made of any claim upon the United States, * * * whether absolute or conditional, * * * shall be absolutely null and void unless freely made and executed in the presence of at least two attesting witnesses after the allowance of such a claim, the ascertainment of the amount due, and the issuing a warrant for the payment thereof."

In the judgment of the court, this provision has no reference to claims in the form of judgments against the collectors of revenue for an excess of duties collected. If the facts set forth in the bill be true,—and they are admitted for the purpose of this demurrer,—the complainant is, and ever has been, the real and

substantial owner of these judgments, and the defendant never had any real interest in the same, or any interest at all, except as trustee and agent of the complainant; and it is a mere question as to whether the court can and will compel him to execute the trust which he took upon himself. It hardly lies with him to say that the government or the collector of the port will not recognize the decree of the court as valid. Allowing the judgments to be a claim against the government,—and no doubt the government, in practice, whatever its legal obligations may be, will in such cases save the collector harmless,—there would be no inconsistency, and no risk of embarrassment, in paying these judgments to the complainant, after a decree of the court adjudging the complainant to be the legal and proper owner, or compelling an assignment to him by the defendant. The courts have adjudged several cases not to come within the intent and meaning of the provision. One is where there is an assignment by death. Another is in case of bankruptcy or voluntary assignment for the benefit of creditors. In Erwin v. U. S., 97 U. S. 392, it was held by the supreme court that this provision applies only to cases of voluntary assignments of demands against the government, and does not embrace cases where there has been a transfer of title by operation of law. It is there said, "The passing of claims to heirs, devisees, or assignees in bankruptcy is not within the evil at which the statute aimed." So, an assignment under a decree of a court, or a passing of the legal title by such decree, is not a voluntary assignment, nor is it within the evil at which the statute is aimed. The same principle is again affirmed in Goodman v. Niblack, 102 U. S. 556; and in this case (opinion by Mr. Justice Miller) the true rule is laid down that the sole purpose of the statute was to protect the government, and not the parties to the assignment. If the government is satisfied to pay to the person adjudged by its own courts to be the true and equitable owner, the party to the assignment cannot complain. In other words, he cannot make this statute a cover and pretext for such a gross fraud and breach of personal trust as is contemplated by the defendant in this case, if the allegations of the bill are true. The language of the court in the last-named case, in speaking of these exceptions to the operation of the statute, such as transfers in bankruptcy and by will, is equally applicable to a transfer by operation of a decree of court. The court says:

"The language of the statute—all transfers and assignments of any claim upon the United States or any part thereof or interest therein—is broad enough (if such were the purpose of congress) to include transfers by operation of law or by will, yet we held it did not include a transfer by operation of law or in bankruptcy, and we said it did not include one by will. The obvious reason of this is that there can be no purpose in such cases to harass the government by multiplying the number of persons with whom it has to deal, nor any danger of enlisting improper influences in advocacy of the claim, and that the exigencies of the party who held it justified and required the transfer that was made."

The assignment by a decree of court is not a voluntary assignment. The full equitable title being already in the complainant, the court will require the defendant to transfer the legal title,

or will itself, in default thereof, adjudge the legal title to be in the complainant. Such an assignment is necessary, under the facts, that justice may be done, and it will cause neither the collector nor the government any embarrassment.

Much stress is laid by defendant's counsel upon the two cases of St. Paul & D. R. Co. v. U. S., 112 U. S. 733, 5 Sup. Ct. 366, and Howes v. U. S., decided by the court of claims, and reported in 24 Ct. Cl. 170. But these cases are neither of them an authority for the defendant in this case. In the first, there had been an assignment of a claim against the United States by way of mortgage to secure a debt, followed by a judicial sale, and the case was properly held to be within the prohibition of the statute. The claim was conceded to be a claim against the United States, and the fact that the transfer of the claim was in the first place by way of security, which was afterwards made absolute by judicial sale, was held not to alter the case. It was a voluntary transfer by way of mortgage for the security of a debt, and finally completed and made absolute by a judicial sale. It was held to be as much within the statute as though the original transfer had .been absolute. This would no doubt be so even if the statute did not in terms include conditional assignments. In the Case of Howes the language, in some places, used by the court of claims, is no doubt broad enough to cover the case at bar, if the claim here was one in form against the United States, especially where that court undertakes to give limit to the decisions of the supreme court in the cases before cited and quoted from. But this language must be interpreted with reference to the facts and circumstances before the court. In that case, Howes & Co. were the owners of certain claims against the United States for their undistributed portion of the Geneva award money, and which they were prosecuting before the court of commissioners of Alabama claims. Judgments were rendered in the California court against Howes & Co., and a receiver appointed, who was, by the decree of the court, subrogated to the rights of Howes & Co., the claimants, and authorized in terms to bring suits upon these claims against the United States in the court of claims. Suits were accordingly brought by the receiver of Howes & Co., and also by Howes, and a sharp contest was made. The receiver first, however, moved in the court of commissioners of Alabama claims for leave to intervene, and to have judgments in said claims entered in his favor; but the court overruled the motion, and gave judgment in favor of Howes & Co. The receiver also appeared before the comptroller of the treasury, and asked to intervene as a rightful claimant; but was again overruled. Then suits were brought by both the contesting parties in the court of claims. A case could hardly be stated coming more squarely within the mischiefs which the statute was intended to prevent. Here was a distinct controversy over a claim confessedly against the government, and which, as such, might be prosecuted in the court of claims. A California court had authorized the prosecution of this claim in the court of claims by the receiver, who was to stand in place of the claim-

ants. But the claimants themselves were there contesting the right of the receiver. The court refused to recognize the power of the state court to authorize the prosecution of the claim by the receiver, and gave judgment in favor of the original claimants. In the case at bar the claim is not one in form against the United States. It is not one which could be prosecuted in the court of claims at all. The controversy out of which the claim grew related simply to the proper adjustment of custom duties, prosecuted first before the government officers, and lastly in the United States circuit court. The suits were for the purpose of ascertaining the proper duties to be paid upon certain importations. The United States was not a party to the proceeding. The parties to the controversy were the importer, the complainant in this case, and the collector. When the controversy was settled the law required that the collector, or person acting as such, should liquidate the entry accordingly. Customs Administration Act 1890, § 15. In Nicholl v. U. S., 7 Wall. 122, it was held that cases arising under the revenue laws are not within the jurisdiction of the court of claims. It is only claims against the government that can be prosecuted in that court, and a claim against the collector for excess of duties paid is, when reduced to judgment, a liquidated debt, and not a claim against the government. See Lopez v. U. S., 24 Ct. Cl. 84. The government, in many cases, has recognized claims in the hands of assignees, and when it does so the assignor will not be heard to complain. These judgments already belong, in equity and good conscience, to the complainant; and the defendant has not now, and never had, any substantial interest in them. If assignments are made by him, under the decree of the court, to pass the legal title, or if the court decrees the title to be in the complainant, who shall say in advance that the collector or the treasurer of the United States will not recognize the complainant's right, and pay over the money to him? It clearly does not lie with the defendant to say that they will not.

The third ground of demurrer urged is that the court has no jurisdiction in equity, because the complainant has an adequate remedy at law. It is urged that there is no allegation that the defendant is not responsible, and that if he should collect the judgments the complainant could recover the amount of him in an action at law. But the answer to this is that it is not true that the complainant has an adequate or ample remedy at law. On the contrary, to compel the execution of a trust is a common head of equity jurisdiction. Suppose the defendant should not collect the judgments. What remedy at law has the complainant? Must he stand by and wait for his money until the defendant sees fit to collect it? That would seem to be his remedy at law in such a case, but it requires but a bare statement of the case to show how incomplete and wholly inadequate it would be.

The demurrer to the bill of complaint is overruled, and a decree will be accordingly entered in favor of the complainant against the defendant, unless the defendant answers the bill of complaint, to the merits, on or before the first Monday of September next.