*Decision will be entered under Rule 50.*

MARTIN CHARLES ANSORGE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 109911. Promulgated May 26, 1943.

*Alex M. Hamburg, Esq.*, for the petitioner.
*Henry C. Clark, Esq.*, for the respondent.

OPINION.

DISNEY, *Judge:* In this proceeding the petitioner prays for redetermination of a deficiency in income tax, determined in the amount of $44,082.14 for the calendar year 1937. The issue presented is whether the petitioner is taxable upon the entire amount of an attorney's fee received by him, or whether he may report only a percentage thereof as capital gain under section 117 of the Revenue Act of 1936. Other issues set forth in the petition have been agreed upon by the parties and will be reflected by decision under Rule 50. All facts were stipulated, except that the petitioner's income tax return for the taxable year was introduced in evidence. We adopt the stipulation by reference and find the facts therein set forth. All pertinent facts stipulated, and recited in the petitioner's return, or admitted in the pleadings, may be summarized as follows:

The return for the taxable year was filed with the collector for the third district of New York.

The petitioner is an attorney, residing and practicing his profession in the State of New York. On November 18, 1932, one DeLuca by an instrument in writing, retained the petitioner as his attorney in fact and attorney at law to represent him in the matter of recovery because of the expropriation of contracts for construction and delivery of two ships by the United States Shipping Board Emergency Fleet Corporation in 1917. The instrument, *inter alia*, provided that of any amount collected the attorney might retain 40 percent "as full compensation for services, fees, and expenses" (including expenses of agents, attorneys, and assistants authorized to be appointed by petitioner), which should be in "full compensation for all such services," that no fee should be charged if no collection or settlement be obtained, that the fee of 40 percent is secured by a lien on any amount recovered "and I hereby assign to my said attorney, as his fee, 40 per cent (40%) of the amount of any such settlement or recovery." DeLuca had previously been represented by other attorneys. On November 18, 1932, as a result of the efforts of petitioner in his representation of DeLuca, an agreement was made between DeLuca and such former attorneys, providing for their sharing to a certain percent in any recovery made by DeLuca and that their rights under a previous contract were terminated. DeLuca had previously made a settlement of his claims, but had brought a suit in the United States Court of Claims to set aside the settlement. A demurrer had been sustained by the Court of Claims on the ground that the facts stated did not show that the settlement had been brought about by coercion.

Through the efforts of the petitioner and attorney's agents and assistants appointed by the petitioner, pursuant to the power of attorney of November 18, 1932, Congress passed a private act authorizing suit by DeLuca in the United States Court of Claims and decree

against the United States for just compensation suffered through the acts of the United States Shipping Board Emergency Fleet Corporation; and the petitioner instituted such action in the Court of Claims. The suit was filed October 20, 1934, and was entitled *Carlo DeLuca* v. *The United States of America.* The petition was signed "Carlo DeLuca by Martin C. Ansorge, attorney for claimant." Among the allegations of the petition was the following:

Claimant is the sole owner of the claim presented herein; no assignment or transfer of said claim, or any part thereof, or interest therein has been made * * *.

The petitioner verified the petition, the verification including the statement that the petitioner "knows the contents of this petition and the same are true." A decree was secured on December 7, 1936, against the United States in the amount of $1,615,329.32, and that amount was paid by check upon the Treasury of the United States on or about June 15, 1937. The check was endorsed by DeLuca and delivered to a trust company in New York, and disbursements were made therefrom, on DeLuca's order, to the former attorneys, to the petitioner, and to others employed by him. The petitioner received $161,946.41, giving a receipt reciting that the amount received "represents payment in full of my claim for services, disbursements, etc., to date in the matter of claim of Carlo DeLuca vs. the United States." The remainder of the 40 percent provided for the petitioner in the instrument from DeLuca of November 18, 1932, was paid to petitioner's assistants, agents, and attorneys, as such instrument authorized.

In his Federal income tax return for the year 1937 the petitioner reported income of $159,828.36 as the net amount received by him, reciting: "On November 18, 1932, under a written contract received an assignment of a certain part of the proceeds of two contracts owned by one Carlo DeLuca." Explaining the view that the amount was received as capital gain by virtue of an assignment of a part of DeLuca's contracts, held by petitioner from November 18, 1932, to June 15, 1937, over two years and not over five years, he reported as taxable 60 percent thereof, amounting to $95,897.02. The Commissioner determined that the entire $159,828.36 was taxable as ordinary income and not capital gain.

Upon brief the parties are in agreement that the sole issue here arises out of the closing language of the instrument of November 18, 1932, reading:

I hereby assign to my said attorney as his fee, Forty Percent (40%) of the amount of any such settlement or recovery.

In other words, if by the above sentence the petitioner acquired a capital asset and in 1937 sold or exchanged it, he properly reported in 1937 only 60 percent of the amount received by him under the

schedule provided by section 117 of the Revenue Act of 1936, as to taxation, sale, or exchange of capital gains and losses. The petitioner argues that DeLuca had a capital asset, that is, the contracts for construction and delivery of ships; that it was expropriated by the United States Shipping Board Emergency Fleet Corporation; that his claim for compensation was a capital asset; that he assigned 40 percent thereof to the petitioner; and that the petitioner stands in DeLuca's shoes. The respondent's view is that the petitioner had no assignment of a capital asset, and could have none under the prohibition of the statute of the United States against assignment of claims against the United States, that he neither sold nor exchanged a capital asset in 1937, but merely collected an attorney's fee, taxable as ordinary income.

To the view that the Federal statute prohibited the assignment of a claim against the United States, the petitioner responds that the claim was against the United States Shipping Board Emergency Fleet Corporation, and not the United States. In our opinion the claim was against the United States. The Emergency Fleet Corporation had not, except as an arm of the United States, the power to expropriate the ships and contracts. The suits were filed against the United States. The act of Congress authorizing the suit brought by the petitioner authorized entry of a decree or judgment against the United States, and the decree was that the plaintiff DeLuca "recover of and from the United States." The judgment was paid by the Treasury of the United States. We think, therefore, that we must consider the effect of section 3477 of the Revised Statutes of the United States. That section, entitled "Assignment of Claims Paid," provides in substance that any assignment of any claim against the United States or any part or share thereof, absolute or conditional, and all powers of attorney for receiving payment of any such claim, shall be absolutely null and void unless made after the allowance of the claim, the ascertainment of amount due, and issuance of a warrant for payment. In *United States* v. *Gillis*, 95 U. S. 407, 413, the Supreme Court considered the statute and said:

* * * No language could be broader or more emphatic than these enactments. The words embrace every claim against the United States, however arising, of whatever nature it may be, and wherever and whenever presented

The petitioner's power of attorney (or "contract" as he calls it in his income tax return for the taxable year) being made several years before allowance, ascertainment of amount, or issuance of warrant, beyond argument contravenes the statute. What is the effect, therefore, upon the petitioner's contention here that he owned and sold or exchanged a capital asset? The tenor of the decisions as to the effect of such assignments is well stated in *Lopez* v. *United States*, 24 Ct. Cls. 84, where, after reviewing the decisions (to the effect that the

statute is for the protection of the Government and that such assignments are void if the assignors revoke and repudiate them before payment, yet the Treasury may if it wishes recognize and pay upon them), the court says:

> The practical effect of the law, thus interpreted, is that such assignments and transfers, whatever may be the consideration, are mere naked powers of attorney, revocable at pleasure.

In *Hitchcock* v. *United States*, 27 Ct. Cls. 185 (204) the court says on this subject:

> In *Lopez's Case* (24 C. Cls. R., 84) we reviewed the decisions on that section, and while we held that a power of attorney to receive payment of a claim, unrevoked and uncontroverted, might be recognized, and payments made upon them to the attorney, at the option of the defendants, in all other cases they are to be held as absolutely void.

Review of many decisions on this subject convinces us that the petitioner, by the language as to assignment contained in the instrument of November 18, 1932, acquired only a revocable interest in the DeLuca's interests, not arising to the dignity of a capital asset, and that in this case between the petitioner and the respondent, involving taxes, we may not recognize the assignment. To effectuate that which the statute brands null and void would be to stultify the law. It is not sufficient to say, as the petitioner argues, that the assignor did not repudiate, and the United States paid. The question here is as to the nature, for tax purposes, of the amount paid. That depends upon the character of the petitioner's right. He held nothing by the "assignment" which DeLuca need heed. We do not think that section 117 of the Revenue Act of 1936 was intended, when the expression "capital assets" was said, to include rights of such precarious tenure as that conveyed by the instrument from DeLuca. Indeed, upon brief the petitioner himself states: "Furthermore the interest assigned was not in the claim as such, but a percentage of the recovery." We can conceive of no capital asset in a mere percentage of a possible recovery through attorney's services and litigation.

Moreover, the facts indicate that petitioner himself did not consider that he held an assignment, for he verified a petition alleging that DeLuca "is the sole owner of the claim presented herein; no assignment or transfer of said claim *or any part thereof or interest therein* has been made" (italics supplied). We are unable to reconcile that solemn assurance to the Court of Claims with the present position that at all times during such litigation in that Court the petitioner had, by assignment, a 40 percent interest. The petitioner makes a suggestion of inadvertence in the language of the petition in the Court of Claims. Yet it is clear that had the fact, now alleged, of assignment to the petitioner been set forth, not only would the peti-

tioner have been a necessary party to the suit, but the way would have been pointed for the defendant to defend on the language of Revised Statutes 3477. We think inadvertence is negatived. In our opinion the petitioner held nothing more than security for his contingent attorney's fee, and it was throughout so intended. The instrument, which in his return petitioner calls a contract, provided for representation for 40 percent "as full compensation for services, fees and expenses," which 40 percent was again and further described as "in full compensation for all such services"; while the language relied on for an assignment says "assign to my said attorney *as his fee* 40 percent of the amount of *any* such settlement or recovery" (italics supplied), indicating to us that the subject matter is not only *fee*, but is only a percent of something wholly contingent, not presently existing. It is to be noted that the language immediately follows reference to security by a lien on the amount recovered. We think the intention was merely to better protect petitioner's attorney's fee. Nor can we perceive sale or exchange, in the mere fact of collection from the United States. The petitioner released nothing, sold nothing, exchanged nothing. He merely gave a receipt for the money he received.

In addition, though we note that champerty is said not to apply to proceedings before governmental departments, 14 Corpus Juris Secundum 365, in our opinion the contract between petitioner and his client with respect to litigation before the Court of Claims was champertous, and contrary to public policy, and not to be given effect by us, if we consider the petitioner to have acquired an interest in the client's cause of action, as alleged here. That litigation before that court was necessary is shown by the fact that an action there had already failed, that an act of Congress was necessary and was secured authorizing further action in the Court of Claims. The instrument of November 18, 1932, refers to such former litigation. In 14 Corpus Juris Secundum 363 we read:

It is a general rule that it is champerty for an attorney to purchase, or take an absolute assignment of, the res of a suit from his client with the intent to carry on the litigation at his own expense and for his own benefit. On the other hand, it is not champerty for a client to assign to his attorney an interest in the subject matter of the suit as security for payment for his services * * *

*Gill* v. *Richmond Co-op. Assn.*, 34 N. E. (2d) 509, holds that an assignment to one who furnishes no consideration except his undertaking to prosecute claim at his own expense and risk and is to be rewarded only by a share in the proceeds is champertous whether the assignee is an attorney or not. *Wellington* v. *Smith*, 147 N. E. 676, holds that an absolute assignment to an attorney of an interest in an estate in consideration of service to be rendered in litigating claim against the

estate is unenforceable, but if, though absolute in form, the assignment was actually given as security for contemplated and professional services, it was not champertous.

We find no case saying that champerty does not apply in matters before the Court of Claims. It is our opinion that the contract or power of attorney between petitioner and his client was, as to the expression with reference to assignment, by way of security for the attorney's fee provided for, but if considered an assignment it was champertous and of no effect here; and that the petitioner merely collected an attorney's fee, and neither sold nor exchanged a capital asset. That such is ordinary income requires no particular comment, since the petitioner has relied only upon the language as to assignment to make it capital gain. We note, however, that in *Harry Friedman*, 45 B. T. A. 976, it was held that an attorney's fee collected by one attorney, assignee from another, was ordinary income and not a gift as contended. We conclude and hold that the Commissioner did not err in determining that the petitioner was taxable upon the full $159,828.36 received by him.

*Decision will be entered under Rule 50.*