OPINION. Arundell, Judge: The principal issue here is whether the amounts paid to the petitioner by the liquidating trust in the years 1943, 1944, and 1945 constituted a return of capital and, therefore, were not taxable income to the petitioner, or whether such amounts constituted compensation for services rendered by petitioner in bringing about the liquidation of the Midwest Land Co. Between 1935 and 1943, petitioner entered into agreements with a number of stockholders of Midwest by the terms of which he was authorized to vote their holdings in order to bring about a liquidation of the company. For this purpose the stockholders first assigned their shares in blank, turned them over to petitioner, and later gave him proxies to vote their shares. The stockholders agreed that, if petitioner were successful in bringing about a liquidation of Midwest, they would pay him a certain percentage of the amounts they received upon liquidation. If unsuccessful, petitioner was obligated to return their shares to them. The crux of petitioner’s contention is that, following the agreements with the shareholders of Midwest whereby they entrusted their shares to him endorsed in blank, he then became the equitable owner of these shares and thus acquired a capital asset. He further contends that the amounts which he expended for travel, legal fees, etc., in securing from the stockholders authority to act in their behalf constituted expenditures which should be capitalized to determine the cost basis of such capital asset. The difficulty with petitioner’s argument is that his own testimony and the other evidence clearly refute the notion that he ever owned any shares of stock in Midwest. The agreements with the shareholders of Midwest did not give the petitioner any property right. He was entrusted with the shares solely for the purpose of using the voting control thus amassed to compel the management of Midwest to liquidate. His right to compensation was contingent upon his success in forcing a liquidation. Until he did in fact bring about the desired liquidation, he had no means of reimbursement for the expenses that he had incurred. When liquidation of Midwest was finally agreed upon and the liquidating trust was set up to accomplish it at the stockholders’ meeting on February 26, 1943, petitioner began to receive his share of the distributions in liquidation, as provided for in the various agreements which he had with the stockholders. The amounts which he so received were clearly compensation for the services which he had undertaken to perform. It is manifest that he was at no time a stockholder in Midwest and that he possessed no property right or investment recognizable as a capital asset. Cf. Martin Charles Ansorge, 1 T. C. 1160; affd., 147 Fed. (2d) 459 (CCA-2); see also Thurlow E. McFall, 34 B. T. A. 108. Since we have determined that petitioner acquired no capital asset, the expenditures which he sought to capitalize for the years 1935 to 1943 must be considered ordinary expenses deductible, if at all, only in the years in which they were paid or incurred. Sec. 23 (a) (1), I. R. C.; Regulations 111, secs. 29.23 (a)-1, 29.23 (a)-2; Irvine F. Belser, 10 T. C. 1031; affd., 174 Fed. (2d) 386 (CA-4). Of the expenditures which he sought to capitalize, only those for the year 1943 in the claimed amount of $1,895.64 are here before us. While the evidence of his expenditures was neither detailed nor complete, petitioner explained that the memorandum books in which he kept a record of his expenses had been lost and that the accountant who had prepared his 1943 tax return had since died. This testimony was corroborated by another accountant who prepared petitioner’s subsequent returns. Petitioner, however, could not state except in a very general way the nature of his expenditures in 1943 in bringing about the liquidation of Midwest. He testified that he made several long trips in connection with stockholders’ meetings, but he gave no explanation of the type of expenses he thereby incurred or their approximate amount. On the basis of the available evidence, we have, under the principle of the Cohan case,[1] determined that petitioner incurred expenses in 1943 in bringing about the liquidation of Midwest in the amount of $1,200. Since petitioner has urged on brief that he was not engaged in the trade or business of liquidating corporations, we may assume his position without deciding this question. The above expenses for 1943 may nonetheless be deducted as nonbusiness expenses incurred for the production of income. Sec. 23 (a) (2), I. R. C.; Regulations 111, sec. 29.23 (a)-15. The second issue raised by petitioner concerns .the deductibility of expenses incurred by him in the years 1943, 1944, and 1945. These expenditures were made by petitioner in connection with his services as an employee of the liquidating trust which was formed to sell the farm properties of Midwest and to distribute the proceeds to the Midwest shareholders. Petitioner was paid a commission of 5 per cent on all the sales which he consummated and was further given an expense allowance of $100 per month by the liquidating trust. Respondent allowed as deductible expenses only the amount of the expense allowance, plus depreciation on petitioner’s automobile, out of the total expenses which were claimed on his returns. Here, again, petitioner had no record of his expenditures and was unable in his testimony to itemize them with any particularity. Several of the expenditures claimed on his returns for the above years were of the type that would be nondeductible as business expenses without additional explanation, and petitioner failed to furnish any explanation of them. From the evidence before us, we have determined that petitioner’s deductible expenses in connection with his employment by the trust amounted to $1,278.27 in 1943, $2,780.28 in 1944, and $2,957.08 in 1.945. Decision will be entered wader Rule 50. Cohan v. Commissioner, 39 Fed. (2d) 540 (CCA-2).