HENRY H. DUDLEY *vs.* GEORGE NICKERSON, JR., & others, executors & trustees, & another, & ELISHA W. ELLIS, intervening petitioner.

Suffolk.    December 5, 1912. — April 1, 1913.

Present: HAMMOND, LORING, BRALEY, & DE COURCY, JJ.

*Lien,* On real estate. *Equity Jurisdiction,* Equitable charge on real estate.

Where, in consideration of a loan of money, the borrower delivers to the lender an instrument in writing by which he agrees that, as soon as he secures an interest in certain real estate, the equity of redemption of which then belongs to his trustee in bankruptcy, he forthwith will make a mortgage conveying such interest to the lender, this instrument is a mere executory agreement and creates no equitable lien upon the real estate; and, if the borrower subsequently acquires the contemplated interest, the lender cannot set up such instrument to establish an equitable charge on

the real estate as against a creditor of the borrower who has brought a suit in equity to reach and apply such equitable interest to the payment of the debt to him.

LORING, J.   The material facts in this suit are as follows: Before his bankruptcy (which took place on April 26, 1907), George Nickerson, junior, caused to be conveyed to Caleb Chase the fee in a parcel of land known as the "Homestead," which was his (Nickerson's) property.   The conveyance in form was an absolute one, but in fact it was made to secure $1,740 lent by Chase to Nickerson.   Thereafter, on November 23, 1908 (more than a year and a half after Nickerson was adjudicated a bankrupt), Chase died, leaving to Nickerson a legacy of $10,000.   At the date of Chase's death Nickerson owed him (including the $1,740) more than $10,000.   In August, 1909, an adjustment was made between Nickerson and the executors of Chase's will, by which the $10,000 legacy was applied in payment of the debt due Chase from Nickerson, and there was paid by or in behalf of Nickerson to the executors an additional sum whereby the entire debt due from Nickerson to Chase's estate (including the $1,740 secured by the conveyance of the "Homestead") was discharged.   A month later and before any conveyance of the "Homestead" had been made pursuant to this adjustment, the trustee in bankruptcy of Nickerson's estate brought a bill to secure a conveyance of the "Homestead."   By a decree made in that suit and dated August 3, 1910, the executors of Chase's will were directed to convey the "Homestead" to Nickerson's trustee in bankruptcy subject to a charge thereon in favor of Nickerson for the $1,740 paid in clearing off the incumbrance on the "Homestead" out of Chase's legacy to Nickerson, which was property of Nickerson acquired subsequently to the date of Nickerson's bankruptcy.   The present bill was brought on June 24, 1911, by a judgment creditor of Nickerson, to reach and apply Nickerson's equitable interest in the "Homestead" in payment of the debt due from Nickerson to the judgment creditor.   A final decree in favor of the plaintiff was entered in this suit * on July 10, 1912, from which the appeal now before us was taken.   This appeal was taken by one Ellis who intervened in this suit to claim Nickerson's equitable charge on the "Homestead" as a prior assignee of it.   Ellis's claim was

---

* In the Superior Court by order of *Hardy*, J.

disallowed in the Superior Court, and the only question before us is the correctness of that decision.

Ellis's claim arises out of an agreement dated July 21, 1909, which it is to be observed is in the month next before the adjustment was made between Nickerson and the executors under Chase's will. The agreement, so far as material here, begins by reciting that whereas Nickerson is, "upon making certain payments to the executors under the will of Caleb Chase, entitled to receive from the said executors certain valuable property rights among which is a certain right to . . . the Nickerson Homestead, so called," etc., and whereas Nickerson has asked Ellis to lend him $1,500. "Now therefore it is agreed by me, the said George Nickerson, Jr., that in consideration of the said sum of $1,500 loaned me by the said Elisha W. Ellis that as soon as I secure . . . my interest in the said Nickerson Homestead in Dennis from the said executors . . . I shall forthwith make a deed of mortgage to the said Ellis conveying in mortgage to him, the said Ellis, the interests hereinbefore referred to, said mortgage deed to be correct in form and to contain stipulations heretofore verbally agreed upon."

It is to be borne in mind that when this agreement was made, (1) the equity of redemption in the "Homestead" which was left in Nickerson when he caused the "Homestead" to be conveyed to Chase as security for the $1,740 loan made to him by Chase, had passed to Nickerson's trustee in bankruptcy, and (2) Chase had died after Nickerson was adjudicated a bankrupt, leaving a legacy to Nickerson of $10,000, but at Chase's death Nickerson owed him more than $10,000. It was in this state of affairs that the agreement was made which Ellis now contends was an assignment of Nickerson's equitable charge on the "Homestead." That agreement is not a present assignment of a present interest in the "Homestead." On the contrary it is an executory agreement that "as soon as I secure . . . my interest in the said Nickerson Homestead" I will mortgage to Ellis that interest. At the time when the agreement was made, not only is it true that Nickerson had no interest in the "Homestead," but it was not certain that he ever would have an interest in it. The equity of redeeming the mortgage on the "Homestead" had passed to Nickerson's trustee in bankruptcy. If the trustee in bankruptcy had redeemed the mortgage of $1,740, Nickerson never would have obtained an inter-

est in the "Homestead" growing out of facts existing at the date of his agreement with Ellis. It is only because the subsequent legacy was set off against this debt of $1,740 that an equitable charge on the "Homestead" in favor of Nickerson came into existence. In this case, as in *Foster* v. *Lowell,* 4 Mass. 308, 312, "the parties themselves, at the time of the agreement, contemplated an assignment which was never made." Ellis can sue Nickerson for not making a mortgage to him (Ellis) of his interest in the "Homestead" as soon as he secured it, and that is the only remedy he has. Nickerson's agreement to make a mortgage of his interest in the "Homestead" as soon as he secured it did not of itself operate as a mortgage of it on an interest in the "Homestead" subsequently being secured by him. Such an agreement is like a promise to pay out of a specified fund when it is recovered, as to which see *Christmas* v. *Russell,* 14 Wall. 69; *Delval* v. *Gagnon,* 213 Mass. 203, 206. See also in this connection *Stearns* v. *Quincy Mutual Fire Ins. Co.* 124 Mass. 61; *Palmer* v. *Merrill,* 6 Cush. 282; *Webb* v. *Walker,* 7 Cush. 46; *Rogers* v. *Hosack's Executors,* 18 Wend. 319, 334. In the case of *Pinch* v. *Anthony,* 8 Allen, 536, relied on by Ellis, there was a special agreement that there should be a lien on property then owned by the parties making the agreement.

*Decree affirmed.*

*J. C. Johnston,* (*C. F. Eldredge* with him,) for the intervening petitioner.

*C. H. Gilmore,* for the plaintiff.