E. IRVING SMITH *vs.* EDGAR WEEKS & others.

Suffolk. November 21, 1924. — April 25, 1925.

Present: RUGG, C.J., BRALEY, PIERCE, CARROLL, & WAIT, JJ.

*Assignment*, Validity, Construction. *Attorney at Law. Equity Pleading and Practice*, Decree, Cross bill.

An assignment by the beneficiary of a trust fund of his interest therein to a certain amount, which is less than the whole, is not unenforceable in equity by reason of the fact that it is an assignment of a part and not of the whole of the assignor's interest.

The beneficiary of a trust fund assigned to an attorney at law, who had been and was rendering the assignor services in seeking to extricate him and his interest in the trust from the grasp of money lenders, "all my right, title and interest in and to the said property and funds and all my claim on account thereof against the said trustees to the amount of sixty-two thousand dollars ($62,000), with full authority to the said . . . [attorney] to collect and receive the same." During the taking of evidence in a suit in equity by the attorney against the trustees and the assignor to enforce the assignment, the judge found "for the purposes of this case that the $50,000 was substantially more than the plaintiff would have had a right to charge for his services in the absence of any agreement." At the close of the evidence the judge found and ruled that the assignment was not champertous, was mainly in consideration of future litigation but in part was for past services, and that the attorney was "entitled to $50,000 in full payment for all services." By order of the judge a final decree was entered reciting that the court found that the assignment was absolute and acquired without fraud, and ordering payment to the attorney of $62,000, of which "12,000 is

to be expended by . . . [him] as trustee for the payment of certain debts . . . and the unexpended balance thereof to be returned to the legal representative of" the assignor, who in the meantime had died. The defendant appealed.  *Held*, that

(1) If the assignment was absolute, it was in the circumstances unenforceable;

(2) If the assignment was given in payment for past and future services to the assignor and disbursements made and to be made, it was enforceable to the extent of the fair value of the services and the incidental disbursements;

(3) It was error for the judge, after ruling that $50,000 was more than the plaintiff had a right to charge, to allow that amount in the final decree;

(4) The final decree must be reversed and, in further proceedings, the plaintiff should be permitted to recover only the fair value for his services with incidental expenses, and should give credit for all payments made to him on account.

In the above described suit, the judge erroneously allowed an amendment in substance to the final decree after its entry and the defendant's appeal. In ordering the final decree reversed for the reasons above set out, this court *stated*, that the rights of a certain defendant for whose benefit the amendment was made might be fully protected on a further hearing as to a new decree.

A cross bill, which seeks only relief which is open under the answer in the main suit, may be dismissed.

BILL IN EQUITY, filed in the Superior Court on July 24, 1923, seeking to enforce an assignment by the defendant Julian Dana de Cordova of his interest in a trust under the will of the late Thomas Dana.

The defendant trustees under the will of Thomas Dana demurred to the bill on nine grounds. In the argument before this court, they relied only on the following grounds:

"5. The bill alleges that the plaintiff is a trustee for certain unnamed creditors of the defendant de Cordova but it is brought in the name of the plaintiff in his individual capacity only and not as trustee for any or all of said creditors.

"6. The allegations contained in the second paragraph of the bill as to the creditors of the defendant de Cordova, who had claims against said defendant which had been placed in the hands of the plaintiff for adjustment or defence and in respect of which the plaintiff had rendered services to said defendant for a period of four years, are not sufficiently certain but are so vague, indefinite and uncertain that these defendants cannot ascertain the meaning thereof, or the

names of said creditors, or the nature and amount of their respective claims, or sufficient information therefrom as to the case they are required to answer.

"7. The allegation contained in the second paragraph of the bill that some of the creditors of the defendant de Cordova forbore to press their suits or claims against said defendant is not sufficiently certain but is so vague, indefinite and uncertain that these defendants cannot ascertain the meaning thereof, or the names of said creditors or the nature of the suits or claims which they forbore to press, or sufficient information therefrom as to the case they are required to answer.

"8. The allegations contained in the second paragraph of the bill that the plaintiff became and was deemed and deems himself to be a trustee of the said assignment to the extent of $12,000 for the benefit of creditors of the defendant de Cordova and for cash advances and services to said defendant during four years are not sufficiently certain but are so vague, indefinite and uncertain that these defendants cannot ascertain the meaning thereof, or the names of the creditors for whom the plaintiff is a trustee, or the dates and amounts of such cash advances, or the nature and dates of such services, or the terms of such trust or trusts, or sufficient information therefrom as to the case which they are required to answer."

Julian Dana de Cordova died while the suit was pending, and Arthur J. Wellington, special administrator of his estate, having become a party by leave of court, was permitted to file a cross bill seeking an order that the assignment was for security only and that the plaintiff in the main suit, Smith, be enjoined from assigning it further. In his answer in the main suit, he set up the same contentions and also the contention that the charges of Smith for services were excessive and unreasonable.

The suit was heard by *Morton*, J., a commissioner having been appointed under Equity Rule 35 to take the testimony. During the taking of the testimony, the judge found "for the purposes of this case that the $50,000 was substantially

more than the plaintiff would have had a right to charge for his services in the absence of any agreement."

The judge filed a statement of findings and rulings which contained the following:

"The plaintiff, a lawyer, had been employed by de Cordova during several years prior to the assignment and there was a substantial amount due him for such services. In 1913 de Cordova had made an assignment of his interest in said trust estate to money lenders to secure a loan of $40,000. The amount claimed under this assignment was as much if not more than the value of the estate. De Cordova consulted with the plaintiff as to the claim of the money lenders, was advised by him that there were legal defences which would substantially reduce the claims and he engaged the plaintiff to take the necessary steps to protect his interests. De Cordova was without ready funds to pay the plaintiff or his creditors, and he had a number of them. He thereupon gave the plaintiff the assignment in question intending it to be an absolute assignment and a payment to the plaintiff in full of $50,000 for past services and for future services in the litigation with the money lenders; and also to enable the plaintiff to pay his other creditors with the $12,000 named in the assignment. He made the assignment with full knowledge, acquired from past experience and as a lawyer, of its effect. There was no fraud, actual or implied, on the plaintiff's part in dealing with his client.

"The plaintiff brought a bill in equity to determine the money lenders' rights and his client's obligations to them, and after an appeal to the Supreme Court his contentions were upheld and the money lenders' claims were reduced by a very large amount.

"Under these circumstances I find and rule that the plaintiff would be entitled to the benefit of the assignment unless the contract accompanying it was champertous, as pleaded. I am satisfied that it was not, and so find. It lacks the elements of maintenance. Litigation over the trust estate was necessary, in view of the extortionate claims of the money

lenders. It was not agreed to be carried on at the sole expense of the plaintiff and it was not so carried on. Money was raised by de Cordova during the progress of litigation and paid to the plaintiff and a small portion of it was used by the plaintiff with de Cordova's knowledge, in payment of court expenses. The assignment was mainly in consideration of future litigation, but in part for past services. The plaintiff if not successful knew that it would be difficult to collect payment for his services, but I am not able to find from the evidence that there was an understanding that he was to receive no pay if not successful.

"The plaintiff claims a share in the accumulated income. I find and rule that he is not entitled thereto, but is entitled to $50,000 in full payment for all services."

By order of the judge, a final decree was entered stating, "the court having found that the assignment of November 17, 1922, to the plaintiff as set forth in the bill of complaint was absolute and acquired without fraud, now therefore it is ordered, adjudged and decreed that the defendants . . . trustees of the estate of Thomas Dana pay over to the plaintiff E. Irving Smith the sum of $62,000 with interest thereon at six per cent from July 19, 1923, the date of demand, of which sum $12,000 is to be expended by the plaintiff as trustee for the payment of certain debts according to memorandum hereto annexed so far as is necessary for the purpose and the unexpended balance thereof to be returned to the legal representative of the late Julian Dana de Cordova; and it is further ordered, adjudged and decreed that the cross bill be dismissed." The memorandum annexed to the decree showed items amounting in all to $11,679, including an item, "E. I. Smith, $1,200."

Seven days after the entry of the final decree, the judge allowed as of the day of the allowance of the final decree a motion by the plaintiff stating "that by accident and mistake there was omitted from the final decree . . . provisions for the rights of the defendant Kimball, wherefore he prays that said final decree may be amended by inserting after the words 'the late Julian Dana de Cordova' the words 'From the sum so to be paid said Smith on his own account there

shall be deducted and paid to Robert M. Kimball the sum of twenty four hundred and fifty dollars with interest as expressed in two certain notes signed by said Smith and now held by said Kimball.'"

The defendant trustees and special administrator appealed from the final decree and also from the allowance of the amendment to the final decree.

*W. R. Buckminster,* (*J. M. Maloney* with him,) for the defendant trustees and special administrator.

*A. E. Seagrave,* (*H. F. Reed* with him,) for the plaintiff.

*C. F. Eldredge,* for the defendant Kimball.

BRALEY, J.   The bill was originally brought against the defendants Weeks and Wellington, as they are trustees under the will of Thomas Dana, and Julian Dana de Cordova, who gave to the plaintiff a partial assignment of the trust funds to which under the provisions of the will he had become entitled.   But, de Cordova having died, Wellington was appointed special administrator of his estate, and having been duly authorized by the court of probate, he appeared to defend, and also filed a cross bill.   The trustees demurred. The demurrer was overruled and they appealed.   The presiding judge, after making certain findings of fact and rulings of law on evidence, which is fully reported, entered a final decree dismissing the cross bill and granting the plaintiff relief, from which the defendants severally appealed.

The plaintiff, an attorney at law, received November 17, 1922, from de Cordova, his client, the following instrument: "I, Julian Dana de Cordova, in consideration of services rendered and to be rendered by E. Irving Smith in the matter of my interest in the property and funds now held by Arthur J. Wellington and Edgar Weeks, the present Trustees under the will of Thomas Dana, and in further consideration of the agreement by the said Smith to pay out of money he may receive under this assignment debts now owed by me to the amount of twelve thousand dollars ($12,000), do hereby assign, transfer and convey to the said E. Irving Smith all my right, title and interest in and to the said property and funds and all my claim on account thereof against the said trustees to the amount of sixty-two thousand dollars ($62,000), with

full authority to the said Smith to collect and receive the same." It is not a defence in equity that the assignment was only of part of the fund, and the controversy is over the enforceable rights of the plaintiff. *Security Bank of New York* v. *Callahan*, 220 Mass. 84, 87.

The undisputed material allegations of the bill, and the plaintiff's statements in his answer to the cross bill, abundantly show, that he was retained in October, 1922, by de Cordova "to extricate the estate to which de Cordova had fallen heir from the grasp of certain persons who had made a loan of $40,000 upon his expectancy and now demanded a sum in excess of the entire estate." The plaintiff, acting under his employment, brought suit which resulted in saving for his client a very substantial part of the trust fund. *De Cordova* v. *Weeks*, 246 Mass. 100. At the date of the assignment, and thereafter de Cordova was "without money and without resources; . . . judgments [were] outstanding against him and poor debtor court citations, and that he did not know which way to turn; . . . . He feared . . . to lose his whole estate." It was under these circumstances that the plaintiff told him, "that in view of the uncertainty of the results of litigation and the doubt whether anything would be recovered" he "was entitled to an absolute assignment of the trust funds . . . to the extent of $50,000 on account of services rendered and to be rendered." The bill alleges in the fourth paragraph, that the assignment in so far as the plaintiff's individual interests are concerned was in consideration of services rendered and to be rendered in respect to said litigation, and "that the same was received and accepted by the plaintiff as payment on account of said services; that the said assignment was made for that consideration; and that the plaintiff is entitled under the terms thereof, to the immediate payment or satisfaction of the same." The third and fourth prayers are, that the plaintiff is entitled absolutely to the transfer of the amount subject to the claim of the defendant Kimball from whom the plaintiff borrowed $1,000 and gave as collateral security a transfer of his interest under the assignment. The judge's findings, that the plaintiff as trustee for de Cordova is

entitled to $12,000 to be expended in payment of certain debts shown by the exhibit attached to the final decree, the remainder to be returned to the administrator, leaves $50,000 which he ordered the trustees to transfer to the plaintiff.

There was due the plaintiff for past services at the date of the assignment $1,200, which according to the plaintiff's own evidence was included in the debts referred to in the assignment, and is also one of the items allowed in the final decree as part of the $12,000 to be received and disbursed by him. But, the bill having alleged generally that the assignment was for past, as well as future services, and the defendants in *DeCordova* v. *Weeks, supra,* not being necessary parties to the present suit as the demurrants contended, the interlocutory decree overruling the demurrer should be affirmed.

It is settled, that the relation of attorney and client is one of trust and confidence. Its fiduciary character precludes the application of conditions governing ordinary mercantile bargaining. The doctrine is founded on public policy. It is demanded by the welfare of society. *Manheim* v. *Woods,* 213 Mass. 537, 542. *Rolikatis* v. *Lovett,* 213 Mass. 545. *Holdsworth* v. *Healey,* 249 Mass. 436. The plaintiff's money was to come out of the fund then subject to the assignor's creditors as security for their debt. If the suit against them failed, the plaintiff's assignment was of no value. But if it was successful, he was to participate for his own benefit in property connected with, and forming part of the litigation. The assignment if absolute is under such circumstances unenforceable. The maintenance of a suit in consideration of some bargain to have part of the thing in dispute, or some profit out of it, was illegal at common law. *Hall* v. *Hallett,* 1 Cox Ch. 134. *Wood* v. *Downes,* 18 Ves. 120. *Thurston* v. *Percival,* 1 Pick. 415, 416. *Belding* v. *Smythe,* 138 Mass. 530. *Boston Bar Association* v. *Hale,* 197 Mass. 423, 437. *Berman* v. *Coakley,* 243 Mass. 348. But even if the judge could properly find on the evidence, that it was the intention of the parties, that the assignment, although absolute in form, was actually given as security for contemplated and necessary professional services and disbursements and the

transaction as thus limited was not champertous, the plaintiff may recover only their fair value, with incidental disbursements. *Tapley* v. *Coffin,* 12 Gray, 420, *Ackert* v. *Barker,* 131 Mass. 436. *Blaisdell* v. *Ahern,* 144 Mass. 393, 396. *Delval* v. *Gagnon,* 213 Mass. 203. *Dudley* v. *Nickerson,* 214 Mass. 274. *Bennett* v. *Tighe,* 224 Mass. 159.

During the trial, the judge announced: "I find for the purposes of this case that the $50,000 was substantially more than the plaintiff would have had a right to charge for his services in the absence of any agreement," and in his final findings, says "The assignment was mainly in consideration of future litigation but in part for past services. The plaintiff if not successful knew that it would be difficult to collect payment for his services, but I am not able to find from the evidence that there was an understanding that he was to receive no pay if not successful." But, after treating the assignment as security for future services, he erroneously ruled, that the full amount was recoverable. While the final decree must be reversed, the finding that the trustees should transfer to the plaintiff $12,000 in trust to be disbursed among the creditors of de Cordova as shown by the schedule, is to stand; and further proceedings are to be taken in the trial court not inconsistent with the opinion. *Old Corner Book Store* v. *Upham,* 194 Mass. 101, 106. The rights of the defendant Kimball also will be thereby fully protected, as the amendment for this purpose to the final decree after it had been entered was on the record invalid. *White* v. *Gove,* 183 Mass. 333, 340.

The cross bill was dismissed rightly. The function of a cross bill is to secure affirmative relief which cannot be administered under the answer to the original bill. The plaintiff as trustee has not received anything under the assignment for which at present he should account, and in the establishment of his claim for services whatever he may have obtained in any form by way of partial payment, is to be deducted.

*Ordered accordingly.*